UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLAKELICK PROPERTIES, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 25-cv-04569 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| THE VILLAGE OF GLEN ELLYN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Blakelick Properties, LLC, ("Plaintiff") brings this motion for a temporary restraining order ("TRO")[1] under Federal Rule of Civil Procedure 65 ("Rule 65") against Defendant The Village of Glen Ellyn ("Defendant") to prevent Defendant from enforcing Ordinance No. 7180-VC (the "Ordinance") that bans the operation and advertisement of short-term rental properties in the Village of Glen Ellyn.[2] After considering the Plaintiff's briefing and the parties' oral arguments held on May 6, 2025, the Court grants Plaintiff's motion for temporary restraining order [9].

**BACKGROUND**

Plaintiff is a limited liability company that owns and operates a five-bedroom single family home located in Glen Ellyn, Illinois (the "Property"). Since March 2022, the Property has been utilized as a short-term rental house whereby guests could reserve the house via rental platform websites such as Airbnb. When the Property was first purchased, it was located in unincorporated

---

[1] The motion was initially filed as an *ex parte* motion. Since Defendant appeared and argued at the May 5, 2025 hearing, the Court considers this motion as a motion for temporary restraining order.
[2] Plaintiff also filed a motion for preliminary injunction. As discussed at oral argument, this Order will focus on the motion for temporary restraining order and will include a briefing schedule for the motion for preliminary injunction.

1

DuPage County, not Glen Ellyn. The Property was annexed into Glen Ellyn's jurisdiction on January 1, 2024.

Beginning in June 2023, Plaintiff's neighbor, Raymond Conley ("Conley") started complaining about the noise level of guests staying at the Property. The complaints came either directly from Conley, the police, or through communicating with the guests. In communication with the guests, Plaintiff learned of threatening behavior Conley exhibited toward guests when he made the determination that the guests' behavior was not up to his standards. During oral arguments, Plaintiff represented that there have been six occasions where Conley engaged in such harassing behavior toward the guests of the Property. Following the initial June 2023 incident, Plaintiff represented that the five other occasions where Conley engaged in such behavior, the guests who were challenged were minorities.

On July 16, 2023, Plaintiff received an email from Conley who described the Property as a "perversion." While Conley acknowledged that there were no ordinances banning short-term rental properties in Glen Ellyn, he informed Plaintiff that he would "do everything in [his] capability to see to it that such use of property is banned in this area." To achieve this goal, Plaintiff alleges that Defendant, at the behest of Conley, sent Plaintiff three separate correspondences: (1) a "Notice of Zoning Violation," alleging that the use of the Property as a short-term rental violated Defendant's ordinances for single-family homes; (2) a cease and desist letter; and (3) an "Ordinance Complaint and Citation," alleging that Plaintiff was in violation of Glen Ellyn zoning ordinances and that its guests were causing a "nuisance" for noise disturbances. Plaintiff claims these noise disturbances occurred during daylight hours and did not last for longer than 10 minutes. The only subsequent action that occurred from Defendant related to these communications concerned the "Ordinance Complaint and

2

Citation" correspondence, whereby Plaintiff agreed to pay a $250 fine in exchange for dismissal of the citation without admission of fault.

On March 17, 2025, Defendant held a discussion on short-term rental properties led by Glen Ellyn Community Director Jennifer Heneghan ("Heneghan"). Plaintiff alleges that no short-term rental hosts were invited to the meeting. Heneghan referred to an "extremely problematic" property, allegedly referencing the Property, that was placing a burden on police due to the amount of complaints, allegedly referring to those filed by Conley. While one attendee expressed that there had only been one problem with short-term rental properties in the last eight years, other attendees, in support of the ban, indicated that they did not like the idea of short-term rentals and that they wanted Glen Ellyn to be "more like Hinsdale, less like Roselle."

Following the March meeting, the Glen Ellyn Council convened in April and voted to pass the Ordinance. The Ordinance was enacted on April 14, 2025. Plaintiff claims that it did not receive notice that Defendant was considering enacting the Ordinance and that Plaintiff was not given an opportunity to be heard or respond to accusations that the Property was a "nuisance."

The Ordinance bans any short-term rentals, meaning rentals for any period less than 30 days. The effective date of the Ordinance was April 14, 2025, but Defendant allowed any pre-existing short-term rental bookings made prior to May 14, 2025 to continue until July 14, 2025. The Ordinance bans any bookings made prior to April 14, 2025 for short-term rentals after July 14, 2025.

On April 27, 2025, Plaintiff filed this lawsuit against Defendants. Plaintiff claims the Ordinance will force the entity to immediately cease operations, cancel future bookings, incur 10% - 25% fines and penalties from Airbnb, be at risk of losing its "Superhost" status on Airbnb, cause the Property to be "de-platformed" from internet-based short-term rental websites, and require Plaintiff to sell the Property in a fire sale and at substantial loss

**LEGAL STANDARD**

A temporary restraining order is "an extraordinary remedy [that is] never awarded as of right." *Benisek v. Lamone,* 138 S.Ct. 1942, 1943 (2018) (internal quotations omitted). To obtain a temporary restraining order, a party must demonstrate that (1) it has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) without such relief, it will suffer irreparable harm. *See, e.g., Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.,* 549 F.3d 1079, 1085 (7th Cir. 2008), *abrogated on other grounds by Nken v. Holder,* 556 U.S. 418, 434 (2009). If the moving party satisfies these requirements, the Court will thereafter conduct a balancing test, weighing the harm the plaintiff will face without the temporary restraining order against the harm the defendant will suffer with the temporary restraining order. *See Girl Scouts of Manitou Council, Inc.,* 549 F.3d at 1085.

**DISCUSSION**

**I.      Likelihood of Success on the Merits**

"A party moving for [] injunctive relief need not demonstrate a likelihood of absolute success on the merits. Instead, [it] must only show that [its] chances to succeed on [the] claims are better than negligible." *See Valencia v. City of Springfield, Illinois,* 883 F.3d 959, 966 (internal citations omitted). To obtain injunctive relief, a plaintiff must show a reasonable likelihood of success on at least one of his claims, not all of them. *See, e.g., Girl Scouts of Manitou Council, Inc.,* 549 F.3d at 1096. In determining Plaintiff's likelihood of success on the merits, the Court will focus on Plaintiff's regulatory taking claim.

Plaintiff contends that the Ordinance is unconstitutional and amounts to a regulatory taking because the Ordinance interferes with Plaintiff's ability to profitably operate and maintain the Property. Plaintiff claims the Ordinance would require Plaintiff to sell the Property and suffer economic loss. During oral argument, Plaintiff argued that it could not operate the Property as a long-term rental because doing so would be unprofitable and Plaintiff could not sell the house for profit due to the large outstanding mortgage.

4

The Takings Clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment, provides that private property will not be "taken" for public use absent just compensation. *Murr v. Wisconsin,* 582 U.S. 383, 392, 137 S. Ct. 1933, 198 L.E.2d 497 (2017). While this mandate does not address a situation where private property is not directly taken, but where significant regulatory burdens impede its use, the Supreme Court has recognized that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Murr,* 582 U.S. at 393 (internal quotations omitted). Absent certain exceptions, "a regulation which denies all economically beneficial or productive use of land will require compensation under the Takings Clause." *Id.* at 393 (internal quotations omitted). Where a regulation does not deprive the landowner of all economically beneficial or productive use of the land, a taking may still be found based on a variety of factors, including "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-based expectations; and (3) the character of the governmental action." *Id.* "That test for regulatory taking necessarily requires a comparison of the value that has been taken from the property with the value that remains in it, and therefore a critical question is to define the unit of property and the extent that a portion has been taken." *Morgan v. City of Chicago,* 115 F.4th 841, 847 (7th Cir. 2024), *reh'g denied*, No. 22-2801, 2024 WL 4534752 (7th Cir. Oct. 21, 2024).

In its motion and at oral argument, Plaintiff avers that it would be economically infeasible to profitably operate and maintain the Property for rental periods extending beyond 30 days. If the Ordinance were to go into effect, Plaintiff claims that it would have to immediately sell the Property and would suffer an economic loss based on the outstanding encumbrance. Additionally, at the time Plaintiff's members purchased the Property, it was in unincorporated DuPage County and not subject to Defendant's laws or ordinances. Even when the Property was annexed to Glen Ellyn, Plaintiff alleges that the use of the Property for short-term rentals was a legal, non-conforming use that Plaintiff

5

had a reasonable expectation would be "grandfathered in" pursuant to applicable Glen Ellyn ordinances.

The facts suggest that Plaintiff acquired the Property under the assumption it could use the Property indefinitely for short-term rentals. The Ordinance would prevent Plaintiff from using the Property for the purpose for which it was purchased and would divest the Property of all economic use, resulting in loss to Plaintiff. The Court finds Plaintiff is likely to succeed on the merits of its regulatory taking claim because the Ordinance would prevent Plaintiff from economically utilizing the Property in a feasible manner and interfere with Plaintiff's investment-backed expectations. *Cf. Morgan,* 115 F.4th at 848-49 (finding district court properly dismissed takings clause claim because plaintiff was on notice, when he purchased condominium, that the building rules prohibited short-term rentals).

## II.     Irreparable Harm

In determining whether irreparable harm is satisfied, Plaintiff must show that no adequate legal remedy is available to cure the harm. *Life Spine Inc. v. Aegis Spine, Inc.,* 8 F.4th 531, 545 (7th Cir. 2021). "Inadequate does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Life Spine, Inc.,* 8 F.4th at 545.

In its written submission and at oral argument, Plaintiff offered a myriad of ways by which the entity would suffer irreparable harm from the Ordinance, including: (1) loss of business; (2) loss of reputation as "Superhost" on Airbnb website; (3) financial loss in the form of fees and commissions Plaintiff could otherwise receive from short-term rentals; and (4) forced sale of the Property in a "fire sale" at a substantial economic loss. At oral argument, Defendant argued that Plaintiff could be financially compensated for any loss. Amazingly, Defendant compared Plaintiff's loss of business to loss stemming from a false arrest claim in an effort to argue that there is no irreparable harm because

money damages are available to cure both claims. The Court finds Defendant's argument unpersuasive.

The Seventh Circuit has recognized that potential loss of an entire business is considered irreparable harm. *See e.g., Girl Scouts of Manitou Counsel, Inc.,* 549 F.3d at 1090. A damages remedy can be inadequate if the remedy comes "too late to save plaintiff's business." *Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994). Plaintiff claims that the Ordinance would prevent Plaintiff from operating its business *completely* as it could not advertise its Property on the internet for short-term rentals. If Plaintiff cannot utilize the Property for short term rentals, Plaintiff would have to sell the Property which would effectively erase Plaintiff's business completely. This is enough to show irreparable harm. Accordingly, the Court finds that Plaintiff has no adequate legal remedy available and, therefore, will suffer irreparable harm.

### III. Balance of Equities and Public Interest

Plaintiff contends the balance of equities weighs in its favor because Defendant has allowed short-term rentals for years without the Ordinance and has not enforced the private nuisance ordinance against Plaintiff or any other short-term rental operator for any incidents concerning short-term rentals. Plaintiff also argues that since short-term rentals only make up 1% of all rental units in Glen Ellyn, Defendant is not likely to be harmed by a temporary stay on the enforcement of the Ordinance.

The Court agrees with Plaintiff that the balance of equities weighs in its favor, as Defendants will not suffer any harm, and Plaintiff is likely to succeed on the merits of its regulatory taking claim and will suffer irreparable harm.

### IV. Bond

"The [C]ourt may issue a temporary restraining order… only if the movant gives security in an amount that the Court considers proper to pay the costs and damages sustained by any party found

7

to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the Court may forgo the bond requirement when "the [C]ourt is satisfied that there's no danger that the opposing party will incur any damages from the injunction." *Habitat Educ. Ctr. v. U.S. Forest Serv.,* 607 F.3d 453, 458 (7th Cir. 2010).

Here, the Court finds that Defendant will not incur any damages if the temporary restraining order is granted. Accordingly, the Court waives Rule 65(c)'s bond requirement.

**CONCLUSION**

For these reasons, the Court grants Plaintiff's motion for temporary restraining order [9] and waives the requirement for Plaintiff to post bond. The Court enters the following briefing schedule for Plaintiff's motion for preliminary injunction [6]: Defendant is given 14 days from the date of this order to file its response to Plaintiff's motion for preliminary injunction and Plaintiff will be given 7 days to file its reply in support of the motion.

**IT IS SO ORDERED.**

Date: 5/8/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge