**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BLAKELICK PROPERTIES, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO.:  25-cv-04569 |
| | ) | |
| THE VILLAGE OF GLEN ELLYN, | ) | Honorable Sharon Johnson Coleman |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
VERIFIED COMPLAINT FOR DECLARATORY AND OTHER RELIEF**

NOW COMES Defendant, The Village of Glen Ellyn (hereinafter "Village") by and through one of its attorneys, DEBORAH ANNE OSTVIG of SCHAIN, BANKS, KENNY & SCHWARTZ, LTD., and for its Answer and Affirmative Defenses to Plaintiff's Verified Complaint for Declaratory and Other Relief states as follows:

**INTRODUCTION**

1.     This case arises out of a business regulation ordinance (the "STR Ban" or the "Ordinance") adopted on or about April 14, 2025 by the Village of Glen Ellyn banning the rental and advertisement for rental of residential properties within the Village on a short-term (30 days or under) basis.

**ANSWER:     The Village admits that Plaintiff brings this action pursuant to a business regulation ordinance but denies any wrongdoing. The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 1 that are inconsistent with the Ordinance.**

2.     Plaintiff is a short-term rental operator of a residential house (the "House") located

at 771 Arboretum Road (formerly 2S727 Arboretum Road) in Glen Ellyn, Illinois (the "Property").

**ANSWER:  Upon information and belief, the Village admits the allegations in Paragraph No. 2.**

3.      Plaintiff brings this complaint for Declaratory and Other Relief against the Village on the following grounds: (1) that the Ordinance violates Plaintiff's rights to due process because it is arbitrary and bears no reasonable relationship to a legitimate governmental purpose, because it violates the Contracts Clause, because it constitutes an unconstitutional "taking" without compensation, and because the advertising ban violates Plaintiff's right to freedom of speech; (2) that Plaintiff has been damaged by these violations of its Constitutional rights and is entitled to relief under 42 U.S.C. § 1983; and (3) that the Ordinance violates the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* (the "FHA") because it was motivated by the intent to reinforce existing patterns of racial segregation in the Village under the pretext of addressing a "public nuisance" and has or will have that disparate impact by eliminating one of the most affordable and popular options for Black, Latino and other minority ethnic groups to enjoy the privileges and benefits of living in the predominantly white residential neighborhoods in the Village, even for a short while.

**ANSWER:  The Village admits that the Plaintiff brings this action pursuant to the grounds stated in Paragraph No. 3 but denies any wrongdoing. The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 3 that are inconsistent with the Ordinance.**

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff Blakelick Properties, LLC is an Illinois limited liability company.

**ANSWER:  Upon information and belief, the Village admits the allegations in Paragraph No. 4.**

2

5.     Plaintiff's sole members are David Blake ("Blake") and Melissa Footlick ("Footlick). Blake and Footlick are married and maintain their primary residence in Fairway, Kansas, although they stay at the Property from time-to-time or otherwise allow their friends and family to stay there when unoccupied by guests.

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 5 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

6.     Defendant Village of Glen Ellyn is a municipal corporation in Illinois.

**ANSWER:     The Village admits the allegations in Paragraph No. 6.**

7.     This Honorable Court has "federal question" jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613(a).

**ANSWER:     The Village admits the allegations in Paragraph No. 7 but denies any wrongdoing.**

8.     Alternatively, this Honorable Court has "diversity jurisdiction" pursuant to 28 U.S.C. § 1332, because Plaintiff's members and Defendant are citizens of different states, and the object of the litigation—Plaintiff's STR business at the Property—has annual revenues in excess of $75,000.

**ANSWER:     The Village admits the allegations in Paragraph No. 8.**

9.     Venue is appropriate in this Honorable Court pursuant to 28 U.S.C. § 1391(b) because Defendant is a municipal corporation in the Eastern Division of the Northern District of Illinois, because the events and transactions occurred in this district and because the Property is located in this district.

**ANSWER:     The Village admits the allegations in Paragraph No. 9.**

## BACKGROUND FACTS

10.     On June 30, 2021, Blake and Footlick purchased the Property.

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 10 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

11.     At the time of their purchase, the Property was located in unincorporated DuPage County, Illinois, outside of the jurisdiction of the Village of Glen Ellyn.

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 11 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

12.     Blake and Footlick initially resided at the Property before they moved to Kansas.

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 12 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

13.     The house located on the Property (the "House") is a five-bedroom, 4,647 square foot single-family home.

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 13 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

14.     All of the fixtures, furniture and equipment and other personal property inside the House are owned by Blake and Footlick and/or Blakelick.

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 14 because it lacks sufficient knowledge and/or information to**

form a belief regarding the truth thereof.

15.     Plaintiff and/or Blake and Footlick pay for all utilities servicing the Property.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 15 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

16.     On or about April 26, 2022, Blake and Footlick transferred title to the Property to Plaintiff via Quit Claim Deed.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 16 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

17.     Plaintiff and its members Blake and Footlick acquired the Property with the intention of listing the Property as a fully furnished rental on internet-based short-term rental platforms such as Airbnb to host authorized guests for periods of under 30 days.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 17 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

18.     Plaintiff has a full-time local assistant to handle issues with guests.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 18 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

19.     Blake and Footlick hosted their first Airbnb guests on March 11, 2022.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 19 because it lacks sufficient knowledge and/or information to**

form a belief regarding the truth thereof.

20.     Prior to enactment of the STR ban, Plaintiff had a visible and popular short-term rental listing and had guests booked through the end of 2025. Plaintiff has a 4.98 out of 5 host rating on Airbnb, and Plaintiff and/or Blake and Footlick have had over 100 bookings. Most if not all of Plaintiff's guests have been from outside of Illinois, or at least outside Glen Ellyn.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 20 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

21.     Due to the STR Ban, Plaintiff will have to cancel some if not all of their future bookings, decline new booking inquiries and take down its short-term rental listing, absent immediate injunctive relief.

**ANSWER:    The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 21 that are inconsistent with the Ordinance.**

22.     Plaintiff has at all times had and enforced a strict "no parties" rule for its guests. Plaintiff has at all times prohibited its authorized guests from inviting or allowing unauthorized persons to stay at the House. Plaintiff's rules also impose "quiet hours" at night. Plaintiff has turned down countless requests from guests intending to use the Property for backyard weddings, baby showers, wedding rehearsal dinners, birthday parties and other social gatherings.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 22 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

23.     However, there have been a couple of instances, both in the summer of 2023, where

Plaintiff's guests may have violated Plaintiff's House Rules or have actively deceived Plaintiff as to their true intentions.

**ANSWER:   The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 23 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

24.     Plaintiff's next-door neighbors are Raymond Conley ("Conley") and Elina Kasman ("Kasman"), who live at 755 Arboretum Road.

**ANSWER:   Upon information and belief, the Village admits the allegations in Paragraph No. 24.**

25.     On June 22, 2023, Plaintiff hosted a group of eight people visiting Glen Ellyn for a work conference. According to one of Plaintiff's guests, a few of them were sitting in the hot tub late one evening, just talking to each other normally and enjoying the summer night. The House Rules prohibited use the hot tub late at night, but no music was being played and their volume level was conversational. As can be seen by the text message that Footlick received from one of the guests attached hereto as ***Exhibit "A"***, Conley was apparently bothered by their quiet presence to the point where at around 12:30 a.m., he attempted to intimidate and harass them by running a loud chainsaw for over 20 minutes for no other reason than to create ear-splitting noise.

**ANSWER:   The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 25 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

26.     Upon information and belief, no police report was filed by Conley or Kasman and the police did not visit the House to investigate nor otherwise issue a citation to Plaintiff or its guests for causing a nuisance.

**ANSWER:** The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 26 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.

27.     On June 25, 2023, another group of guests rented the House. The woman renting the House was getting married and the booking was for her and her wedding party. After the wedding reception, the group who had booked the House returned and continued to enjoy the outdoor pool and backyard. This merriment, which included some exuberant exclamations, bothered Conley and Kasman so much that they took a video and posted it to YouTube, and emailed Plaintiff shortly afterwards.

**ANSWER:** The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 27 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.

28.     It was and still is not clear whether this was a "party" or simply the guests in returning to the House after the wedding reception and continuing to enjoy each other's company.

**ANSWER:** The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 28 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.

29.     Upon information and belief, no police report was filed by Conley or Kasman and the police did not visit the House to investigate nor otherwise issue a citation to Plaintiff or its guests for causing a nuisance.

**ANSWER:** The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 29 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.

30. After these two incidents in June 2023, Conley and Kasman were on high alert.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 30 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

31. On the weekend of July 15, 2023, Plaintiff hosted a group of African American guests. These guests also apparently violated Plaintiff's House Rules by disturbing Conley and Kasman.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 31 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

32. Upon information and belief, Conley called the police on these guests, and the police visited the House. However, no citation was issued and no police report was filed.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 32 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

33. On July 16, 2023, in an email to Plaintiff, Conley described short-term rental as "perversion" and although he acknowledge that there was no "explicit regulations banning short-term rentals" in Glen Ellyn, he vowed to "do everything in [his] capability to see to it that such use of property is banned in this area."

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 33 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

34. In response to these incidents in the summer of 2023, Plaintiff installed noise

monitoring devices and security cameras around the House and made other changes to reinforce the importance of its "House Rules." Plaintiff also requested that Conley and Kasman immediately contact them in the future should its guests bother them in any way.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 34 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

35.     They refused this offer and have not attempted to engage with Plaintiff to resolve any nuisances as they arise.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 35 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

36.     Instead, Conley has elected to engage in "self-help" by deliberately engaging in annoying, harassing and intimidating conduct towards Plaintiff's guests, particularly by targeting Plaintiff's Black, Hispanic and dark-skinned guests.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 36 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

37.     On September 2, 2023, at approximately 8:30 p.m., Conley attempted to intimidate and harass Plaintiff's Hispanic guests by driving his truck through his front and side yard, parking it next to Plaintiff and Conley's fence line, opening the doors of the truck, and blasting loud music from his truck for over an hour, as can be seen by the text messages attached hereto as ***"Exhibit B."***

**ANSWER:** **The Village states that it can neither admit nor deny the allegations**

10

contained in Paragraph No. 37 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.

38.     Upon information and belief, the police were not called, no nuisance violation was issued nor any police report filed against Plaintiff or these guests.

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 38 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

39.     Conley later installed a flood light on the side of his house and pointed it directly into Plaintiff's backyard to further annoy and harass Plaintiff's guests.

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 39 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

40.     On December 11, 2023, the Village of Glen Ellyn passed an ordinance annexing the Property into the jurisdiction of the Village, effective January 1, 2024.

**ANSWER:     The Village admits the allegations in Paragraph No. 40.**

41.     On December 20, 2023, Defendant sent a "Notice of Zoning Violation" to Plaintiff, alleging that Plaintiff's short-term rental activity violated Glen Ellyn zoning ordinances for "single family homes."

**ANSWER: The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 41 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

42.     Defendant sent this Notice at Conley's request. According to the Village meeting notes of the December 11, 2023 Village Board Meeting, Conley "asked for a zoning code change

to stop abuse of a residential neighborhood" and insisted on "a ban on short-term rentals."

**ANSWER:** **The Village denies that the notice was sent at Conley's request. The Village maintains the language of the Village Board Meeting minutes from December 11, 2023, are self-evident and thus denies any allegations set forth in Paragraph No. 42 that are inconsistent with the Village Board Meeting minutes.**

43. Plaintiff hired counsel who responded to Defendant's Notice of Violation to which the Village did not respond.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 43 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

44. On April 27, 2024, Plaintiff's noise monitoring device signaled a high decibel level. Plaintiff immediately contacted the guests, who were Hispanic, and asked them to turn down the music.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 44 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

45. Plaintiff's guests responded that "there is a house [Conley's] next to us with the music louder than us…because our music is not loud."

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 45 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

46. Upon information and belief, the police were not called, no nuisance violation was issued nor any police report filed against Plaintiff or these guests.

**ANSWER: The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 46 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

47.     On April 30, 2024, Defendant sent a "Cease and Desist" letter to Plaintiff.

**ANSWER: The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 46 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

48.     Defendant sent this Cease-and-Desist letter at the specific instance of Conley. According to Village Board Minutes for the meeting on April 15, 2024, attached hereto as *Exhibit "C"*:

> Ray Conley, resident, spoke about the ongoing issue with the Airbnb [Plaintiff's House] in his neighborhood. He said there had been minimal progress in resolving the issue of parties at this location. He reviewed the history of the Village's actions, stating that he has not received any updates on the situation and would like to know what is holding up resolution of the issue. **Village Attorney Matthews said that notification had been sent to the owners <u>and no complaints have been received recently</u>. He asked that the residents let the police know when there is a disturbance.**
>
> Mr. Conley's wife, Elina Kasman, related her experience with the current activity. Village Attorney Matthews reiterated that the neighbors need to notify the police of violations and unwanted behaviors, otherwise the Village would not be aware of the zoning violation. The police response would be an investigation into the vehicles at the property to see if further investigation would be in order.

(Emphasis added.)

**ANSWER:     The Village denies that the Cease-and-Desist letter was sent at the specific instance of Conley. The Village maintains the language of the Village Board Meeting minutes from April 15, 2024, are self-evident and thus denies any allegations set forth in Paragraph No. 48 that are inconsistent with the Village Board Meeting minutes.**

49.     On June 11, 2024, Defendant issued an "Ordinance Complaint and Citation" to

Plaintiff, alleging that Plaintiff was in violation of Glen Ellyn zoning ordinances and that its guests staying at the House on that date were causing a "nuisance." This Citation set a hearing date for June 26, 2024. Upon information and belief, this is the one and only time that Defendant has ever issued a complaint or citation against a short-term rental operator. A true and correct copy of the June 11, 2024 Ordinance Complaint and Citation is attached hereto as ***Exhibit "D".***

**ANSWER:    The Village, upon information and belief, admits that a citation was sent to Plaintiff. The Village denies the remaining allegations set forth in Paragraph 49.**

50.    On June 11, 2024, Plaintiff's guests were underprivileged Black girls invited to stay at the House by a not-for-profit organization, Imperfect Angels, that had made a booking through Airbnb for its "I Am Her Girls Bonding Retreat." The children were chaperoned and supervised at all times by two adults employed by Imperfect Angels.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 50 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

51.    Upon information and belief, no police were called out to the House during this stay to investigate any alleged nuisance activity.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 51 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

52.    Upon information and belief, the Ordinance Complaint and Citation was based on a complaint from Conley about the girls being loud in the backyard of the House and at the outside pool around 11:30 a.m. on June 11, 2024.

**ANSWER:    The Village states that it can neither admit nor deny the allegations**

14

contained in Paragraph No. 52 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.

53.     Ray Conley was listed as one of the Village's two witnesses. Conley appeared at the initial hearing date for the Ordinance Citation and Complaint. The second named witness, Sigle Cline, did not appear.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 53 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

54.     Sigle Cline and his wife, Linda Calabrese-Cline, live at 772 Arboretum Road, across the street from Plaintiff's House.

**ANSWER:    Upon information and belief, the Village admits the allegations in Paragraph No. 54.**

55.     On May 5, 2024, Mr. and Mrs. Cline met with Footlick at their home. They told her that they had no problem whatsoever with Plaintiff's short-term rental activity. They shared that they had concerns following a few incidents the previous summer (2023); however, since Plaintiff added more monitoring devices and implemented other anti-nuisance operational reforms, there had been no issues and they had no qualms about Plaintiff's use of the House as a short-term rental.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 55 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

56.     After the Citation was issued, Footlick met again with Mrs. Calabrese-Cline, who offered to have Mr. Cline speak with Conley. Footlick accepted this offer and Mr. Cline met with Conley to advocate for Plaintiff and to see if Conley and Plaintiff could find common ground.

Conley refused this entreaty.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 56 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

57. During that June 11, 2024 weekend, Plaintiff's noise monitoring devices were set to alert Plaintiff if the decibel level exceeded the threshold of 70dB and especially if such noise exceeded that level for more than 5 minutes.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 57 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

58. Upon information and belief, normal indoor conversation is at a volume of between 60dB and 70dB. A vacuum cleaner emits noise at a level of around 75 dB. A barking dog is usually between 80 dB and 100dB.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 58 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

59. During this girl's retreat, Plaintiff received 2 noise monitoring alerts that the decibel level exceeded 70dB: one at 12:38 p.m. on June 11, 2024 and a second at 2:38 p.m. on June 12, 2024. Neither noise incident lasted more than 10 minutes and both occurred during daylight hours. Copies of the noise monitoring alerts are attached hereto as ***Exhibit "E"***.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 59 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

60.     Notably, in Illinois and likely elsewhere, isolated incidents, even causing "substantial annoyance," are insufficient as a matter of law to qualify as a "private nuisance." *See Solorio v. Rodriguez*, 2013 IL App (1st) 121282 ¶ 14.

**ANSWER:    The Village makes no answer to Paragraph No. 60 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 60.**

61.     Plaintiff appeared at the June 26, 2024 hearing via its counsel and the hearing was continued several times, especially after Plaintiff filed a motion to dismiss and argued to the Village that Conley was an unreliable witness with possible ulterior motives, including a penchant for targeting Plaintiff's non-white guests.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 61 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

62.     On or about June 26, 2024, Conley went into his backyard for 30 minutes and shot a rifle repeatedly outside while Plaintiff's assistant was at the House performing maintenance.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 62 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

63.     Section 6-2-3.13(c) of the Glen Ellyn Municipal Code prohibits any person from firing, discharging or otherwise using any revolver, pistol, shotgun, rifle or air gun, BB gun, gas operated gun…within the limits of the Village."

**ANSWER:    The Village makes no answer to Paragraph No. 64 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the**

17

**allegations in Paragraph No. 64.**

64.     Plaintiff's assistant called the Glen Ellyn police. The police came to the House in response. Plaintiff's assistant showed them pictures and video of Conley shooting his guns in his backyard but the police chose to not issue a citation to Conley for this illegal conduct.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 64 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

65.     Ultimately, on January 28, 2025, Defendant agreed to voluntarily dismiss the alleged zoning violations in the ordinance Complaint and Citation.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 65 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

66.     Without admitting fault, Plaintiff agreed to pay a $250 fine in exchange for dismissal because the cost of traveling from Kansas to Glen Ellyn alone to contest the unfounded accusations of a nuisance caused by young Black girls playing in the backyard exceeded $250.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 66 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

67.     On March 17, 2025, the Village held a discussion on "short-term rentals," led by Village Community Director Jennifer Heneghan.

**ANSWER:    The Village admits the allegations in Paragraph No. 67.**

68.     Neither Plaintiff nor any short-term rental hosts were invited to participate. Audio of this meeting is available online, with the STR discussion beginning at around 1:44:30.

**ANSWER:** **The Village maintains the audio of the Village Board Workshop from March 17, 2025, as self-evident and thus denies any allegations set forth in Paragraph No. 68 that is inconsistent with the audio from the Village Board Workshop.**

69.     At this meeting, at 1:54:00, Ms. Heneghan stated that they knew of "dozens" of short-term rentals visible on internet platforms such as Airbnb and VRBO, and that we already know about one situation that has been extremely problematic," apparently referring to Conley's complaints about Plaintiff's guests as the basis for banning short-term rentals in Glen Ellyn. Ms. Heneghan stated that there was a "burden" on the Village in having the police respond to Conley's complaints.

**ANSWER:** **The Village maintains the audio of the Village Board Workshop from March 17, 2025, as self-evident and thus denies any allegations set forth in Paragraph No. 69 that is inconsistent with the audio from the Village Board Workshop.**

70.     Another attendee, who upon information and belief is a Village trustee or officer, said at 2:01:00, "I don't like the idea of Airbnbs and VRBOs here. We don't need them."

**ANSWER:** **The Village maintains the audio of the Village Board Workshop from March 17, 2025, as self-evident and thus denies any allegations set forth in Paragraph No. 70 that is inconsistent with the audio from the Village Board Workshop.**

71.     Another attendee, who upon information and belief is a Village trustee or officer, said at 2:01:23, that "we've had one problem that I've seen in 8 years," also apparently referring to Conley's complaint(s) about Plaintiff. He reiterated, at 2:04:48, "we've had one incident. One. One. One."

**ANSWER:** **The Village maintains the audio of the Village Board Workshop from March 17, 2025, as self-evident and thus denies any allegations set forth in Paragraph No. 71**

that is inconsistent with the audio from the Village Board Workshop.

72.     Another attendee, who upon information and belief is a Village trustee or officer said at 2:08:39, that she supported an STR Ban because in her opinion, Glen Ellyn should be "more like Hinsdale, less like Roselle."

**ANSWER:     The Village maintains the audio of the Village Board Workshop from March 17, 2025, as self-evident and thus denies any allegations set forth in Paragraph No. 72 that is inconsistent with the audio from the Village Board Workshop.**

73.     The entire focus of the "problem" discussed at this meeting was how to regulate or restrict internet-based short-term rental activity from sites such as Airbnb. Glen Ellyn Police Chief Philip Norton discussed the logistical challenges, complexities and cost of enforcing regulations on short-term rentals. Trustees noted the potential difficulty that the Village would have with enforcing operational limitations on short-term rentals because of their belief that operators would conspire with their guests to "skirt" such restrictions. Thus, the Village Trustees were in favor of a simple ban on online advertisements for short-term rentals as the "cleaner way" of controlling short-term rental activity.

**ANSWER:     The Village maintains the audio of the Village Board Workshop from March 17, 2025, as self-evident and thus denies any allegations set forth in Paragraph No. 73 that is inconsistent with the audio from the Village Board Workshop.**

74.     Upon information and belief, the Glen Ellyn police have visited the House in response to Conley's complaints only two times – once on the weekend of July 15, 2023 and the last time on the weekend of April 5, 2025 (see below).

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 74 because it lacks sufficient knowledge and/or information to**

form a belief regarding the truth thereof.

75.     Each time the police have been called by Conley, Plaintiff's guests happened to be or include black or brown-skinned persons. Neither of these police visits have resulted in any citations, prosecutions or fines against Plaintiff or its guests.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 75 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

76.     Further, each time that Conley has engaged in abusive, harassing or terrorizing behavior towards Plaintiff's guests, Plaintiff's guests have been Black, Hispanic or dark-skinned persons.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 76 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

77.     On the weekend of April 5, 2025, Conley called the Glen Ellyn police department on Plaintiff's guests who were staying at the House at the time. Plaintiff's guests were, upon information and belief, dark-skinned and of Indian or Pakistani ethnicity. The police arrived based on the report of "loud music" and a "party." As can be seen from Ring Camera video footage from the front door of the House, the guest was shocked at the accusation of a "party," as no party was happening and no loud music was being played. The guest answering the door admitted that a few people were talking in the backyard but denied creating any unreasonable noise or nuisance. The police went away without filing a police report or otherwise issuing a ticket. Footlick reviewed security footage and saw one person kicking around a soccer ball while a few others in the backyard talked and smoked cigarettes outside.

**ANSWER:** The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 77 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.

78. On April 14, 2025, the Village enacted Ordinance No. 7180-VC, amending Title 3 of the Glen Ellyn Municipal Code for "Business Regulations" to add a new chapter 46.

**ANSWER:** The Village admits the allegations in Paragraph No. 78.

79. A true and correct copy of Ordinance No. 7180-VC is attached hereto as ***Exhibit "F"***.

**ANSWER:** The Village maintains Ordinance No. 7180-VC is self-evident and deny any inconsistencies with Exhibit F and Ordinance No. 7180-VC.

80. Even though Defendant had only recently dismissed its attempted prosecution of Plaintiff, Defendant did not give Plaintiff any prior notice that it was considering adopting a blanket STR Ban nor did Defendant give Plaintiff any opportunity to be heard or to respond to accusations that Plaintiff's business activities constituted a "public nuisance."

**ANSWER:** The Village denies the allegations in Paragraph No. 80.

81. The Village invited Conley to attend and he did attend the Village Council meeting were the Ordinance was passed.

**ANSWER:** The Village admits that Conley was in attendance at the Regular Village Board Meeting where the Ordinance was passed. The Village denies the remaining allegations in Paragraph No. 81.

82. Prior to the Village Council vote, Conley thanked the Village for adopting the STR ban. A Village Trustee thanked Ray for his patience.

**ANSWER:** The Village maintains the recording of the subject Village Council

**meeting is self-evident and thus denies any allegations set forth in Paragraph No. 82 that is inconsistent with the recording from the subject Village Council meeting.**

83.     The Ordinance declares it to be "unlawful for any person or entity to operate, use, offer for rent or use, or advertise for rent or use, any property within the Village as a short-term rental" except in the case of a seller of a dwelling unit who maintains possession after closing of the sale for a short period of time pursuant to a written agreement.

**ANSWER:     The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 83 that are inconsistent with the Ordinance.**

84.     In the Ordinance, Defendant declares that "the operation of any short-term rental within the Village in violation of this chapter is a public nuisance…"

**ANSWER:     The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 84 that are inconsistent with the Ordinance.**

85.     Penalties for violating the Ordinance include $2,500 per day fines after the first day, which each day of violation being considered a separate offense.

**ANSWER:     The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 85 that are inconsistent with the Ordinance.**

86.     The effective date of this STR Ban is April 14, 2025. Although the Ordinance states that the Village will allow any pre-existing short-term rental bookings made prior to May 14, 2025 to continue up to July 14, 2025, the Ordinance also states that any bookings made prior to April 14, 2025 that would permit guests to stay on or after June 14, 2025 would be illegal. Due to this

23

contradictory and confusing language, it is entirely unclear which future bookings are legal or illegal and therefore, absent immediate injunctive relief, Plaintiff will be forced to immediately shut down its operations.

**ANSWER: The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 86 that are inconsistent with the Ordinance.**

87. The rental market for long-term furnished rentals for a 5-bedroom house is virtually non-existent. It is economically infeasible for Plaintiff to immediately shift from short-term rentals to long-term rentals, furnished or unfurnished, at a monthly rent that could cover Plaintiff's expenses.

**ANSWER: The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 87 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

88. Additionally, there is little to no market for 30-day minimum bookings on Airbnb or VRBO in Glen Ellyn. Because of the algorithm used by short-term rental platforms, requiring Plaintiff to change its online listing to a minimum duration of 31-day stays would hide Plaintiff's listing from the most common guest searches in the area.

**ANSWER: The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 88 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

89. Due to the Ordinance, without preliminary injunctive relief, Plaintiff will have to immediately cease operations, cancel future bookings, incur 10% to 25% fines and penalties from Airbnb, risk Blake and Footlick's "Superhost" status and risk being de-platformed from Airbnb

and VRBO altogether.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 89 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

90.     Blake and Footlick have multiple properties that they have listings for on Airbnb and VRBO, with only the House being in the Village of Glen Ellyn. If they are forced to cancel numerous existing bookings, there exists a substantial risk that these platforms will deem these cancellations as constituting repeated or severe violations of the "Ground Rules for Hosts" policies, which could lead to these platforms suspending Blake and Footlick as hosts and removing their listings for all of their properties.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 90 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

91.     Should Plaintiff or its members be de-platformed from Airbnb and VRBO, such action would result in immediate and dire economic harm to their primary source of income.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 91 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

92.     Plaintiff stands to lose over $150,000 in net profit per year if it is unable to continue its short-term rental business at the House alone. Combined with its other properties, Plaintiff stands to lose triple that amount. Without immediate relief, Plaintiff will have to sell the Property in a fire sale and at a substantial loss and faces the realistic scenario of being forced to sell all of its Properties, even those outside of the Village, at a substantial loss.

**ANSWER: The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 92 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

### COUNT I – DUE PROCESS

93. Plaintiff restates and incorporates paragraphs 1 through 92 by reference as if fully stated herein.

**ANSWER: The Village restates their answers to Paragraph Nos. 1 through 92 as their answers to Paragraph No. 93 of Count I as if fully stated herein.**

94. Under the 14th Amendment to the United States Constitution, no State may "deprive any person of life, liberty or property without due process of law."

**ANSWER: The Village makes no answer to Paragraph No. 94 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 94.**

95. The stated justification for the STR Ban is that the business of short-term rentals, and in particular, Plaintiff's short-term rental, constitutes a "public nuisance."

**ANSWER: The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 95 that are inconsistent with the Ordinance.**

96. However, Defendant cannot simply ban a business by merely asserting that it is a public nuisance without any proof. A bare assertion, unsupported by factual findings or proof, does not satisfy basic Due Process requirements.

**ANSWER: The Village denies the allegations in Paragraph No. 96.**

97. Under Illinois law, a municipality does not have the authority under the Due

26

Process Clause of the 14th Amendment to arbitrarily declare something to be a "public nuisance" if it not one in fact. *See Bushnell v. Chicago, B. & Q. R. Co.*, 259 Ill. 391, 395 (1913). "It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general laws either of the city or of the State, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place every house, every business and all property of the city at the uncontrolled will of the temporary local authorities." *Yates v. Milwaukee*, 77 U.S. 497, 505 (1870); *see also Cnty. Comm'n v. Nat'l Grid NE Holdings 2 LLC*, Civ. Action No. 2:21-cv-00307, 2022 U.S. Dist. LEXIS 170838, at *36-*44 (S.D. West Va. Sept. 21, 2022) (applying *Yates* to reject the municipality's argument that it could declare "open dumps" to be "public nuisances" without reference to whether such conditions would be a public nuisance under common law, despite a state statute authorizing municipalities to enact ordinances to abate "anything which the commission determines to be a public nuisance.")

**ANSWER: The Village makes no answer to Paragraph No. 97 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 97.**

98.     A "public nuisance" is not the same as a "private nuisance." A public nuisance is an unreasonable interference with a right common to the public, whereas a private nuisance is an unreasonable interference with a private property interest. "Rights common to the public" include "the rights of public health, public safety, public peace, public comfort and public convenience." *City of Chicago v. Beretta, U.S.A. Corp.*, 213 Ill. 2d 351, 370-371 (2004).

**ANSWER: The Village makes no answer to Paragraph No. 98 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the**

27

**allegations in Paragraph No. 98.**

99.    There is no factual support for any claim that the business of short-term rentals, or Plaintiff's business in particular, unreasonably interferes with any rights common to the public in Glen Ellyn.

**ANSWER:    The Village denies the allegations in Paragraph No. 99.**

100.    Defendant already has an anti-private nuisance ordinance on its books that is fully capable of enforcing against unreasonable conduct that disturbs the peace or the neighborhood.

**ANSWER:    The Village maintains the language of its Ordinance regarding nuisances is self-evident and thus denies any allegations set forth in Paragraph No. 100 that are inconsistent with the Ordinance.**

101.    Section 7-2-3(W) of the Glen Ellyn Municipal Code defines a "nuisance" as including "[t]o rent, use or permit the use of a building or premises for any business, pleasure or recreation which, by its boisterous nature, disturbs the peace of a neighborhood or is dangerous or detrimental to health." Glen Ellyn Muni. Code § 7-2-3(W).

**ANSWER:    The Village makes no answer to Paragraph No. 101 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 101.**

102.    Neither plaintiff nor their guests have never been successfully prosecuted for allowing its guests to cause a private nuisance.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 102 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

103.    The Recitals for the Ordinance assert that "short-term rentals are often used for

events by occupants and attendees who have no connection to the neighborhood, which events subject adjoining property owners and neighborhoods to a constant turn-over of occupants and visitors attending such events along with excessive noise, traffic and spillover parking."

**ANSWER:** **The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 103 that are inconsistent with the Ordinance.**

104.    The mere fact that people have visitors and guests who have "no connection to the neighborhood" does not qualify as a "nuisance." Anyone who orders a pizza, takes an Uber or has a social gathering invites people that have "no connection to the neighborhood." The duration of a person's occupancy has no rational relationship to whether such person will interfere with a right common to the public.

**ANSWER:** **The Village denies the allegations in Paragraph No. 104.**

105.    Similarly, the mere fact that "events" are held at the House that sometimes have "constant turn-over of occupants and visitors attending such events" does not even rationally state a "nuisance." There is no reason to believe that a short-term guest is more or likely to have a pool party or host friends over for a party than a long-term tenant or owner. In fact, short-term guests, usually from out-of-state, have fewer friends in Glen Ellyn or the Chicagoland area to invite to a party.

**ANSWER:** **The Village denies the allegations in Paragraph No. 105.**

106.    Additionally, Plaintiff's House Rules, attached hereto as **_Exhibit "G"_**, expressly ban events, parties and visitors that are not authorized by Plaintiff. If a violation of these House Rules is discovered, Plaintiff can demand that such activity stop, have these guests fined by Airbnb or VRBO or thrown out entirely and banned from Airbnb/VRBO entirely. However, if Plaintiff

signed a long-term lease with a tenant, Plaintiff would have no right to control whether or not such tenant hosted "events" or had unauthorized guests, and Plaintiff would also have no right to place noise monitoring devices inside and outside the House.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 106 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

107.    The Recitals continue: "short-term rentals have also been the sites of volatile and at times violent activity in neighboring municipalities and across the country."

**ANSWER:** **The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 108 that are inconsistent with the Ordinance.**

108.    However, the exact same thing could be said about any property type. Long-term rentals and even owner-occupied homes have also been the "sites of volatile and at times violent activity." There is no rational relationship between the situs of such violent or volatile activity, or the durational terms of occupancy, and the activity itself. Regardless, the mere assertion that bad things have reportedly happened at short-term rentals elsewhere does not mean that short-term rentals qualify as a "public nuisance" in Glen Ellyn.

**ANSWER:** **The Village denies the allegations in Paragraph No. 108.**

109.    The stated rationales for the STR ban in the Ordinance should be deemed pretextual because they do not make sense as describing a "public nuisance."

**ANSWER:** **The Village denies the allegations in Paragraph No. 109.**

110.    Upon information and belief, there are currently only around 15 active listings on Airbnb in the Village of Glen Ellyn. *See* Airbnb listings for "Glen Ellyn" from May through

December 2025, attached hereto as ***Exhibit "H"***.

**ANSWER: The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 110 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

111. By comparison, there are, according to the Chicago Metropolitan Agency for Planning "Community Data Snapshot" for the Village of Glen Ellyn as of August 2024, a total of 2,432 renter-occupied housing units in the Village. A true and correct copy of this "Community Data Snapshot" report is attached hereto as ***Exhibit "I"***.

**ANSWER: The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 111 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

112. Short-term rentals represent less than 1% of all renter-occupied housing units in Glen Ellyn.

**ANSWER: The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 112 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

113. Upon information and belief, there have been at most one or two incidents (out of 115 bookings) arguably constituting a private nuisance to Conley and Kasman, both occurring in the summer of 2023 prior to Plaintiff implementing stricter rules, more noise monitoring and security cameras and tighter screening of potential guests.

**ANSWER: The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 113 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

114.    As Village Attorney Matthews admitted in the April 15, 2024 meeting, "no complaints have been received recently." He urged Conley and Kasman to contact the Glen Ellyn police if Plaintiff's guests caused a nuisance. Conley and Kasman have failed to do so, except on April 5, 2025, when they made a frivolous nuisance report to the police about Plaintiff's Indian/Pakistani guests kicking the soccer ball.

**ANSWER:    The Village maintains the language of the Village Board Meeting minutes from April 15, 2024, are self-evident and thus denies any allegations set forth in Paragraph No. 114 that are inconsistent with the Village Board Meeting minutes. The Village states that it can neither admit nor deny the remaining allegations contained in Paragraph No. 114 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

115.    There is no rational basis for Defendant to classify **all** short-term rentals as "public nuisances" in Glen Ellyn. To the contrary, according to Village Attorney Matthews, the Village does not know of any nuisances unless complaints are made to the police, and the Village has not received any recent complaints about short-term rental activity.

**ANSWER:    The Village denies the allegations in Paragraph No. 115.**

116.    Defendant cannot, consistent with Due Process, arbitrarily ban Plaintiff's legal business and burden all other current and future property owners in Glen Ellyn on the bases of unverified and possibly fictitious, highly exaggerated and/or pretextual complaints by a single individual about his neighbor.

**ANSWER:    The Village denies the allegations in Paragraph No. 116.**

117.    Defendant cannot arbitrarily pick sides in a neighbor dispute and, without adequate notice and an opportunity for a hearing, use its lawmaking power to render judgment and declare

one side to be the "nuisance" based solely on hearsay and unverified allegations.

**ANSWER:    The Village denies the allegations in Paragraph No. 117.**

**WHEREFORE, based on the above, the Village denies that it is liable to the Plaintiff in any amount whatsoever, and requests that the cost of this action be assessed against the Plaintiff and all other relief as deemed just and equitable.**

## COUNT II – CATEGORIAL "*PER SE*" TAKING

118.    Plaintiff restates and incorporates paragraphs 1 through 92 by reference as if fully stated herein.

**ANSWER:    The Village restates their answers to Paragraph Nos. 1 through 92 as their answers to Paragraph No. 118 of Count II as if fully stated herein.**

119.    The Fifth Amendment to the United States Constitution provides that private property shall not be "taken for public use without just compensation." Although originally applicable only to the federal government, pursuant to the 14th Amendment of the United States Constitution, this "Takings Clause" is equally applicable to state and local governments.

**ANSWER:    The Village makes no answer to Paragraph No. 119 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 119.**

120.    Supreme Court precedent distinguishes between "physical" takings and "regulatory" takings. Physical takings are categorically unconstitutional *per se* in the absence of a compelling public purpose and compensation. By contrast, an owner's claim that it has been subjected to a "regulatory" taking must be analyzed and evaluated on a fact-specific, case-by-case basis.

**ANSWER:    The Village makes no answer to Paragraph No. 120 as they are**

conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 120.

121.    The definition of a "physical taking" has expanded over the years. In *Kaiser Aetna v. United States*, 444 U.S. 164 (1979), the Supreme Court held that a navigational servitude imposed over a private developer's marina, the effect of which was to allow the public to access the property on a continuous bases, qualified as a categorical, *per se* "physical taking." *Id*. at 176, 179-180 ("[O]ne of the most essential sticks in the bundle of rights that are commonly characterized as property" is "the right to exclude others….[W]e hold the 'right to exclude,' so universally held to be a fundamental element of the property right, falls within this category of interests that the Government cannot take without compensation… [T]he imposition of the navigational servitude in this context will result in an actual physical invasion of the privately owned marina.")

**ANSWER:   The Village makes no answer to Paragraph No. 121 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 121.**

122.    In *Cedar Point Nursery v. Hassid*, 594 U.S. 143 (2021), the Supreme Court held that a California regulation requiring employers to permit union organizers onto their farm property for up to three hours per day, 120 days per year, qualified as a *per se* physical taking under the Fifth and Fourteenth Amendments.

**ANSWER:   The Village makes no answer to Paragraph No. 122 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 122.**

123.    In *Heights Apartments v. Walz*, 30 F. 4th 720 (8th Cir. 2022), the Eight Circuit held

that a COVID-19 restriction on the ability of private landlords to evict tenants or non-renew leases during the COVID pandemic, except under certain limited circumstances, constituted a *per se* taking because it "would require landlords to rend to individuals they would otherwise reject," and therefore deprived landlords of their fundamental "right to exclude." *Id.* at 733.

**ANSWER: The Village makes no answer to Paragraph No. 123 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 123.**

124.     Here, the 30-day minimum STR Ban forces Plaintiff to rent the Property to individuals that they might otherwise reject: legally protected tenants.

**ANSWER: The Village denies the allegations in Paragraph No. 124.**

125.     Airbnb guests staying under 30 days are subject to the terms and conditions of their contract with Airbnb and agree that they are only "licensees" of Airbnb hosts and thus not legally tenants. *See Wood v. Evergreen Condominium Association, 2021 IL App (1st) 200687 ¶¶ 25-26*.

**ANSWER: The Village makes no answer to Paragraph No. 125 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 125.**

126.     Under Illinois law, a person who pays rent on a monthly basis and occupies in a residential home for 30 days or more legally qualifies as a "tenant" and has a lease. A "tenant" is legally distinct from a "licensee," "invitee" or "guest" because a tenant has exclusive rights to possession, even against the owner or landlord, and a tenant can only be removed by a court order of possession.

**ANSWER: The Village makes no answer to Paragraph No. 126 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the**

allegations in Paragraph No. 126.

127.    Illinois law provides other distinct protections for "tenants." *See, e.g.*, Illinois Landlord and Tenant Act, 765 ILCS 705/0.01, *et seq.*; Illinois Eviction Act, 735 ILCS 5/9-101, *et seq.*, Illinois Landlord Retaliation Act, 765 ILCS 721/1, *et seq.*; Illinois Safe Homes Act, 765 ILCS 750/1, *et seq.*, the Illinois Tenant Utility Payment Disclosure Act, 765 ILCS 740/1, *et seq.* and the Illinois Rental Property Utility Services Act, 765 ILCS 735/0.01, *et seq.*

**ANSWER:    The Village makes no answer to Paragraph No. 127 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 127.**

128.    Plaintiff prefers hosting guests on a short-term rental basis through internet-based platforms such as Airbnb for a number of reasons, but primarily because they are not legally protected "tenants" with whom Plaintiff would have to enter into leases.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 128 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

129.    Under the 30-day minimum STR Ban, Plaintiff is now forced to rent to legal protected tenants with whom it might otherwise reject in favor of short-term licensees.

**ANSWER:    The Village denies the allegations in Paragraph No. 129.**

130.    Thus, the STR Ban operates as a categorical, *per se* "physical taking" because it has the effect of compelling the physical invasion of Plaintif's Property by legal protected "tenants" who have exclusive possession of the Property as opposed to mere "licensees," who do not.

**ANSWER:    The Village denies the allegations in Paragraph No. 130.**

131.   Defendant has violated Plaintiff's property right by appropriating Plaintiff's "right to exclude" without just compensation.

**ANSWER:   The Village denies the allegations in Paragraph No. 131.**

**WHEREFORE, based on the above, the Village denies that it is liable to the Plaintiff in any amount whatsoever, and requests that the cost of this action be assessed against the Plaintiff and all other relief as deemed just and equitable.**

## COUNT III – REGULATORY TAKING

132.   Plaintiff restates and incorporates paragraphs 1 through 117 and 119 and 120 by reference as if fully stated herein.

**ANSWER:   The Village restates their answers to Paragraph Nos. 1 through 117 and 119 and 120 as their answers to Paragraph No. 132 of Count III as if fully stated herein.**

133.   Under the "regulatory taking" doctrine established in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922) and *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), a use restriction on real property may constitute a "taking" if not reasonably necessary to the effectuation of a substantial public purpose. *Penn Central*, 438 U.S. at 127.

**ANSWER:   The Village makes no answer to Paragraph No. 133 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 133.**

134.   Courts are required to balance three factors in engaging in a "regulatory takings" analysis: (1) the "economic impact of the regulation," (2) the extent to which the regulation interfered with distinct investment-backed expectations and (3) the character of the government action.

**ANSWER:   The Village makes no answer to Paragraph No. 134 as they are**

conclusions of law and no answer is required. **If an answer is required, the Village denies the allegations in Paragraph No. 134.**

135.    At the time Blake and Footlick first acquired the Property in 2021, and when Plaintiff acquired title in 2022, Plaintiff and its members had distinct, investment-backed expectations that they would be able to afford the purchase and maintenance of the Property through revenue generated through fully furnished short-term rentals booked through Airbnb and other similar short-term rental platforms.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 136 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

136.    At the time Plaintiff and its members purchased the Property, it was located in unincorporated DuPage County, and not subject to the laws of the Village.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 136 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

137.    Even after the annexation of Plaintiff's Property, Plaintiff's use of the Property for short-term rental was a legal, non-conforming use that Plaintiff had a reasonable expectation would be "grandfathered in" pursuant to Glen Ellyn Ordinance Sections 10-8-2 and 10-8-7.

**ANSWER:    The Village maintains the language of its Ordinances regarding nonconformities are self-evident and thus denies any allegations set forth in Paragraph No. 137 that are inconsistent with the Ordinances. The Village denies the remaining allegations in Paragraph No. 137.**

138.    "Where a use that is not permitted under the current zoning ordinance predates that

ordinance, the use is typically allowed to continue as a legal nonconforming use." *Giannakopolous v. Adams*, 2018 IL App (1st) 162364 ¶ 26 (holding that a property annexed with an established use could not be adversely affected by new regulations by the new municipality because the village annexed the property "as is" with knowledge that it was nonconforming when annexed). "It would be manifestly unjust to deprive the owner of property of the use to which it was lawfully devoted when the ordinance became effective." *Aurora v. Burns*, 319 Ill. 84, 96 (1925).

**ANSWER: The Village makes no answer to Paragraph No. 138 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 138.**

139. It is economically infeasible for Plaintiff to profitably operate and maintain the Property by renting to longer term tenants for periods of 30 days or more.

**ANSWER: The Village denies the allegations in Paragraph No. 139.**

140. Because Defendant gave no advance notice to Plaintiff that it was adopting this immediate ban on STR, absent preliminary injunctive relief, Plaintiff will be forced to shutter its operations and cannot reasonably afford the transition period to a new long-term tenant.

**ANSWER: The Village denies the allegations in Paragraph No. 140.**

141. The effect of the Ordinance is that Plaintiff would be forced to immediately sell the Property and its other Properties and suffer a substantial economic loss.

**ANSWER: The Village denies the allegations in Paragraph No. 141.**

142. Because of the substantially detrimental economic impact of the Ordinance, its substantial interference with investment-backed expectations and the sudden and blanket nature of its mandate, the Ordinance should be declared unconstitutional as a regulatory taking.

**ANSWER: The Village denies the allegations in Paragraph No. 142.**

**WHEREFORE, based on the above, the Village denies that it is liable to the Plaintiff in any amount whatsoever, and requests that the cost of this action be assessed against the Plaintiff and all other relief as deemed just and equitable.**

## COUNT IV – FIRST AMENDMENT FREEDOM OF SPEECH

143.    Plaintiff restates and incorporates paragraphs 1 through 117 by reference as if fully stated herein.

**ANSWER:    The Village restates their answers to Paragraph Nos. 1 through 117 as their answers to Paragraph No. 143 of Count IV as if fully stated herein.**

144.    The First Amendment, as applied to Defendant through the Fourteenth Amendment, prohibits the government from "abridging the freedom of speech."

**ANSWER:    The Village makes no answer to Paragraph No. 144 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 144.**

145.    The Ordinance declares it to be "unlawful for any person or entity to operate, use, offer for rent or use, or advertise for rent or use, any property within the Village as a short-term rental" except in the case of a seller of a dwelling unit who maintains possession after closing of the sale for a short period of time pursuant to a written agreement.

**ANSWER:    The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 145 that are inconsistent with the Ordinance.**

146.    Violations of the Ordinance are subject to daily fines of $2,500, with each day of violation constituting a separate violation.

**ANSWER:    The Village maintains the language of Ordinance No. 7180-VC is self-**

evident and thus denies any allegations set forth in Paragraph No. 146 that are inconsistent with the Ordinance.

147. Additionally, under the Ordinance, Defendant has the right to seek injunctive relief to force Plaintiff to take down or "snooze" its listing.

**ANSWER:** **The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 147 that are inconsistent with the Ordinance.**

148. Although Section 4 of the Ordinance appears to grandfather in pre-existing bookings made prior to either April 14, 2025 or May 14, 2025, the ban on "advertisements" is effective immediately.

**ANSWER:** **The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 148 that are inconsistent with the Ordinance.**

149. The Ordinance violates the First Amendment in three primary ways: First, because of the definition of "short term rental," which defines the prohibited conduct in terms of speech, the Ordinance directly targets speech and is not a mere business regulation. Second, Plaintiff's Airbnb listing contains both commercial and non-commercial speech, and because both forms of speech are inextricably intertwined, the standard of strict scrutiny must apply to the Ordinance and Defendant lacks a compelling justification for the law, which is also not narrowly tailored towards protecting that interest. Third, Plaintiff is not the advertiser or offeror; the internet-based short term rental platform (Airbnb) is the advertiser or offeror. Thus, to the extent that Defendant intends to enforce its advertising ban against Plaintiff instead of Airbnb, Inc (and other similar platforms), the law is unconstitutional under the First Amendment.

**ANSWER:** The Village denies the allegations in Paragraph No. 149.

**A. The Ordinance Directly Targets Speech, Not Conduct.**

150. The definition of "short-term rental" in the Ordinance is "[a] dwelling unit or portion thereof as defined herein **offered** for rent for a period which does not exceed thirty (30) consecutive days." (Emphasis added).

**ANSWER:** The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 150 that are inconsistent with the Ordinance.

151. Because the Ordinance defines "short-term rental" in terms of the durational term that is "offered," the Ordinance directly targets speech because it defines the object of the regulation in terms of how it is advertised. Additionally, Defendant's legislative intent clearly shows that it intended to target online speech about short-term rentals as the primary mechanism to regulate short-term rental activity. At a minimum, Defendant has inextricably intertwined the forbidden conduct and speech about the forbidden conduct.

**ANSWER:** The Village denies the allegations in Paragraph No. 151.

152. For example, in a hypothetical scenario where a long-term tenant stays in a rented apartment beyond the expiration date for a short period of time, such as a week, and pays pro-rated rent for those extra few days, this is not deemed "short-term rental" and is thus not prohibited by the Ordinance because there was never any express "offer" made. The prohibition in the Ordinance only applies to offers for stays of 30 days or less due to the definition of "short-term rental," not the actual conduct of renting for period of 30 days or less.

**ANSWER:** The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 152 because it lacks sufficient knowledge and/or information to

form a belief regarding the truth thereof.

**B. Strict Scrutiny Applies Because The Listing Contains Non-Commercial Speech That is Inextricably Intertwined With Commercial Speech**

153. An Airbnb listing is essentially like a Facebook, Yelp or a LinkedIn profile for the Property.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 153 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

154. Even when not available for booking, a listing can be viewed and contains valuable information to the marketplace about the Property, about the hosts and about the community of Glen Ellyn and the surrounding area.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 154 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

155. Blake and Footlick are "Superhosts" on Airbnb, which is an exclusive "badge" earned by certain qualified hosts who meet Airbnb's performance, quality assurance and customer service criteria.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 155 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

156. Plaintiff's Airbnb listing for the House and their "Superhost" badge are publicly visible on the Airbnb platform.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 156 because it lacks sufficient knowledge and/or information to**

43

**form a belief regarding the truth thereof.**

157.     Plaintiff's listing contains pictures and descriptions of the House and the local community, glowing reviews from Plaintiff's guests and dynamic pricing information.

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 157 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

158.     Having "Superhost" status and an active Airbnb listing confers unique benefits to Blake and Footlick, who often travel and use Airbnb as guests. Selective Airbnb hosts are more likely to accept booking inquiries from other Airbnb "Superhosts" because there is an increased trust factor as between "hosts," especially ones that have been deemed to be "Superhosts."

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 158 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

159.     Airbnb publishes and controls the commercial portions of the listing visible on Airbnb's website and app. An Airbnb host can only control the length of a booking through either setting a minimum stay requirement in the listing settings or description or by refusing to accept booking inquiries below a certain duration. Thus, there is nothing in Plaintif's Airbnb listing that, by itself, qualifies the listing as one offering either "short-term rental" or "31 days or more rental."

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 159 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

160.     Aside from providing the price terms on certain available dates, Plaintiff only writes and publishes non-commercial information on is Airbnb listing.

44

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 160 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

161. Plaintiff's ability to post non-commercial information on its listing is inextricably intertwined with Airbnb, Inc.'s advertisement of short-term rental of the House to prospective guests.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 161 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

162. Blake and Footlick risk losing their "Superhost" status if they are forced to remove their Airbnb listing, and further risk being "de-platformed" by Airbnb or at least suspended and penalized if they cancel too many bookings.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 162 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

### C. Plaintiff Is Not The Advertisor; Airbnb, Inc. Is

163. A material dispute and controversy exists as to whether the Ordinance applies to Plaintiff's Airbnb listing at all, and in general, whether Defendant can restrict what content Plaintiff can publish on the internet. Plaintiff contends that Airbnb, Inc., not Plaintiff, is the entity that is advertising Plaintiff's House for short-term rental to its customers. Plaintiff contends that it merely creates and maintains a listing, responds to inquiries and performs host services for Airbnb, Inc. pursuant to their terms in exchange for compensation.

**ANSWER:** **The Village maintains the language of Ordinance No. 7180-VC is self-**

45

evident and thus denies any allegations set forth in Paragraph No. 163 that are inconsistent with the Ordinance.

164.    Upon information and belief, Defendant considers Plaintiff's Airbnb listing (and listing on other internet-based platforms) to be advertisements subject to penalty under the Ordinance. Upon information and belief, Defendant intends to enforce the Ordinance by monitoring short-term rental listings on internet-based platforms such as Airbnb and penalizing hosts such as Plaintiff for the advertising activity of Airbnb, Inc. and VRBO.

**ANSWER:    The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 164 that are inconsistent with the Ordinance.**

165.    Airbnb, Inc., as an internet-based platform and business, offers and advertises the services and accommodations of its hosts to prospective guests through its website and app.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 165 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

166.    Airbnb, Inc.'s platform provides tools for hosts to set up and manage their listing that Airbnb, Inc. then offers to guests, depending on availability and the guest's search terms.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 166 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

167.    The Airbnb platform defines "hosts" as members who publish listings and agree to provide "host services" for Airbnb, Inc. in exchange for compensation.

**ANSWER:    The Village states that it can neither admit nor deny the allegations**

contained in Paragraph No. 167 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.

168.    When a guest sees an available, desirable booking in the locality they are intending to visit, the guest sends a booking inquiry to Airbnb through the Airbnb platform and advances payment to Airbnb, and the Airbnb platform informs the host that such an inquiry has been made and provides other details regarding the potential booking.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 168 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

169.    Airbnb, Inc. provides compensation to hosts for hosts performing services for Airbnb customers (or guests).

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 169 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

170.    After each host service, both guests and hosts have an opportunity to post publicly visible reviews of each other through the Airbnb platform that are visible on each member's profile and on the host's listing.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 170 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

171.    An illustrative analogy can be drawn to a hypothetical law banning the sale or advertisement of a particular product available at a retail store. It would be absurd to apply this ban on advertisement to the cashier or an employee at the store, as it is the store itself that is

advertising and selling the banned product.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 171 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

172.    To the extent Defendant intends to enforce the ban on advertisement of short-term rental against Plaintiff, the Ordinance is unconstitutional as it unduly infringes Plaintiff's freedom of speech without a compelling reason or narrow tailoring.

**ANSWER:    The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 172 that are inconsistent with the Ordinance. The Village denies the remaining allegations in Paragraph No. 172.**

**WHEREFORE, based on the above, the Village denies that it is liable to the Plaintiff in any amount whatsoever, and requests that the cost of this action be assessed against the Plaintiff and all other relief as deemed just and equitable.**

<u>**COUNT V – CONTRACTS CLAUSE**</u>

173.    Plaintiff restates and incorporates paragraphs 1 through 117 by reference as if fully stated herein.

**ANSWER:    The Village restates their answers to Paragraph Nos. 1 through 117 as their answers to Paragraph No. 173 of Count V as if fully stated herein.**

174.    Article I, Section 10, Clause 1 of the United States Constitution prohibits states from "impairing the Obligation of Contracts."

**ANSWER:    The Village makes no answer to Paragraph No. 174 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 174.**

175.     Pursuant to its terms, the Ordinance takes effect immediately as of April 14, 2025 except in Section 4, where it purports to grandfather in certain pre-existing bookings up through June 14, 2025 or July 14, 2025.

**ANSWER:     The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 175 that are inconsistent with the Ordinance.**

176.     The effect of the Ordinance, by banning "advertisements" for short-term rental, is to force Plaintiff to take down or "snooze" its listing, refuse booking inquiries and cancel existing reservations for dates beyond either June 14, 2025 or July 14, 2025..

**ANSWER:     The Village maintains the language of Ordinance No. 7180-VC is self-evident and thus denies any allegations set forth in Paragraph No. 176 that are inconsistent with the Ordinance. The Village states that it can neither admit nor deny the remaining allegations contained in Paragraph No. 176 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

177.     The Ordinance interferes with Plaintiff's existing obligations under its contractual relationships with its short-term rental platforms, and Plaintiff will suffer fines and penalties and risk being completely suspended from the short-term rental service should Plaintiff cancel its future bookings and decline future reservation requests.

**ANSWER:     The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 177 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

178.     Additionally, because the Airbnb Superhost Program requires compliance with certain performance standards, including maintaining a cancellation rate of under 1% of all

bookings and responding to over 90% of all inquiries, the Ordinance substantially impairs Plaintiff's contract with Airbnb, Inc. and other similar internet-based short term rental platforms.

**ANSWER:    The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 178 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

179.    The Ordinance is not justified by a significant or legitimate public purpose. Instead, the Ordinance was adopted to address a special interest: the complaints and concerns of Plaintiff's neighbors, Ray Conley and Elina Kasman.

**ANSWER:    The Village denies the allegations in Paragraph No. 179.**

180.    The Ordinance is not reasonably tailored to achieve that purpose as there are existing laws on the books regarding private nuisances.

**ANSWER:    The Village denies the allegations in Paragraph No. 180.**

**WHEREFORE, based on the above, the Village denies that it is liable to the Plaintiff in any amount whatsoever, and requests that the cost of this action be assessed against the Plaintiff and all other relief as deemed just and equitable.**

## COUNT VI – SECTION 1983 DAMAGES

181.    Plaintiff restates and incorporates paragraphs 1 through 180 by reference as if fully stated herein.

**ANSWER:    The Village restates their answers to Paragraph Nos. 1 through 180 as their answers to Paragraph No. 181 of Count VI as if fully stated herein.**

182.    Section 1983 of the United States Code states:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or its

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983.

**ANSWER: The Village makes no answer to Paragraph No. 182 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 182.**

183. Defendant has subjected Plaintiff and its members to deprivations of their Constitutional rights.

**ANSWER: The Village denies the allegations in Paragraph No. 183.**

184. Due to the deprivation of constitutional rights, Plaintiff has been actually damaged as Plaintiff has had to cancel bookings, decline booking inquiries, de-list from internet-based platforms and otherwise suffer the consequences of cancellation in terms of Plaintiff's status with such platforms.

**ANSWER: The Village denies the allegations in Paragraph No. 184.**

185. Pursuant to 42 U.S.C. § 1988, Plaintiff, if it is the prevailing party, is allowed an award of its reasonable attorney's fees and costs in this Court's discretion.

**ANSWER: The Village denies the allegations in Paragraph No. 185.**

**WHEREFORE, based on the above, the Village denies that it is liable to the Plaintiff in any amount whatsoever, and requests that the cost of this action be assessed against the Plaintiff and all other relief as deemed just and equitable.**

## COUNT VII – VIOLATION OF THE FAIR HOUSING ACT

186. Plaintiff restates and incorporates paragraphs 1 through 117 by reference as if fully stated herein.

**ANSWER: The Village restates their answers to Paragraph Nos. 1 through 117 as**

their answers to Paragraph No. 186 of Count VII as if fully stated herein.

187.    The federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.* (the "FHA") was enacted for the purpose of ending racial segregation in housing. The FHA applies to municipalities that pass laws with discriminatory effects, even if those laws are facially neutral and are not motivated by explicit discriminatory intent.

**ANSWER:    The Village makes no answer to Paragraph No. 187 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 187.**

188.    Under the FHA, municipalities are prohibited from enacting or enforcing ordinances or polices that "otherwise make unavailable or deny" housing on the bases of race, 42 U.S.C. § 3604(a).

**ANSWER:    The Village makes no answer to Paragraph No. 188 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 188.**

189.    Under the FHA, municipalities are also prohibited from enforcing any laws or policies that have the effect of discriminating against any person in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities, therewith, because of race or national origin or other protected characteristics. 42 U.S.C. § 3604(b).

**ANSWER:    The Village makes no answer to Paragraph No. 189 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 189.**

190.    A plaintiff may prove a violation of the FHA by showing: (1) disparate treatment; (2) disparate impact; or (3) a refusal to make a reasonable accommodation.

**ANSWER:** **The Village makes no answer to Paragraph No. 190 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 190.**

191.    Despite the passage of the FHA over 50 years ago, racial segregation in housing persists, especially in the Chicago suburban area.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 191 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

192.    Upon information and belief, Glen Ellyn is predominately white, with over 78% identifying as white, 3.3% identifying as Black or African American, 8.2% identifying as Hispanic or Latino and 6.7% identifying as biracial.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 192 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

193.    By comparison, upon information and belief, the City of Chicago is 35.9% white, 29.2% Black and 29.8% Hispanic or Latino and 10.8% biracial.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 193 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

194.    Racial segregation in housing is the result of a history of racial discrimination but currently persists largely due to economic factors. Race and poverty are strongly correlated and thus, certain communities and neighborhoods maintain imbalanced racial demographics simply because of the lack of affordable housing opportunities.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 194 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

195. Short-term rental platforms such as Airbnb threaten to remove this invisible economic barrier to entry by making otherwise unaffordable housing opportunities accessible to minorities booking more affordable, short-term stays.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 195 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

196. Suburban Chicago municipalities have rushed to ban or heavily restrict short-term rental activity, despite at most only anecdotal issues and episodic complaints, largely in order to "preserve their neighborhood character." However, this rationale is a pretext and euphemism for reinforcing existing patterns of racial and economic segregation.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 196 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

197. Defendant enacted the Ordinance in response to the apparently racially motivated complaints of a single resident, Ray Conley.

**ANSWER:** **The Village denies the allegations in Paragraph No. 197.**

198. At the time Defendant enacted the Ordinance, it knew or should have known that Conley's complaints were pretextual, highly exaggerated, false and/or racially motivated. At one of the hearings on the Ordinance Complaint and Citation, Plaintiff's attorney explained to Hearing Officer Armstrong and to the Village that Conley's complaints and his abusive conduct was

54

targeted at Plaintiff's non-white guests.

**ANSWER:** **The Village states that it can neither admit nor deny the allegations contained in Paragraph No. 198 because it lacks sufficient knowledge and/or information to form a belief regarding the truth thereof.**

199. Notwithstanding this knowledge, Defendant ignored this warning, took Conley's complaints at face value, and passed the Ordinance without any proof of rational justification.

**ANSWER:** **The Village denies the allegations in Paragraph No. 199.**

200. A municipality violates the Fair Housing Act when it enacts an ordinance at the behest of constituents that it knows or should have known have illegal motivations, and that ordinance has a disparate impact on the housing opportunities for such minorities.

**ANSWER:** **The Village makes no answer to Paragraph No. 200 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 200.**

201. Due to the absence of any reasonable, fact-based justification for the Ordinance, and the facts that that there are only a handful of active listings on Airbnb in Glen Ellyn that constitute less than 1% of all rented units and there has only been a single or a handful of "incidents" of nuisance in 8 years, the stated justifications for this law by Defendant should be presumed to be pretextual in nature.

**ANSWER:** **The Village denies the allegations in Paragraph No. 201.**

202. The effect of the Ordinance will be to restrict housing opportunities for Blac, Hispanic and non-white minorities in Glen Ellyn and will reinforce and perpetuate existing patterns of racial segregation.

**ANSWER:** **The Village denies the allegations in Paragraph No. 202.**

203.    Pursuant to Section 3613 of the FHA, Plaintiff, as an "aggrieved person," may file a civil action and obtain appropriate relief for violations, including actual damages, punitive damages and injunctive relief.

**ANSWER:    The Village makes no answer to Paragraph No. 203 as they are conclusions of law and no answer is required. If an answer is required, the Village denies the allegations in Paragraph No. 203.**

204.    Pursuant to Section 3613(c) of the FHA, if Plaintiff is the prevailing party, Plaintiff is entitled to file a petition for its reasonable attorneys' fees and costs.

**ANSWER:        The Village denies the allegations in Paragraph No. 204.**

**WHEREFORE, based on the above, the Village denies that it is liable to the Plaintiff in any amount whatsoever, and requests that the cost of this action be assessed against the Plaintiff and all other relief as deemed just and equitable.**

**DEFENDANT DEMANDS A TWELVE PERSON JURY.**

<u>**AFFIRMATIVE DEFENSES**</u>

NOW COMES Defendant, The Village of Glen Ellyn (hereinafter "Village") by and through one of its attorneys, DEBORAH ANNE OSTVIG of SCHAIN, BANKS, KENNY & SCHWARTZ, LTD., and for its Affirmative Defenses to Plaintiff's Verified Complaint for Declaratory and Other Relief states as follows:

## I.        FIRST AFFIRMATIVE DEFENSE

### Qualified Immunity

For its first affirmative defense to the claims alleged in the Plaintiff's Verified Complaint for Declaratory and Other Relief, the Village states as follows:

56

1.     At all times relevant to the matters alleged in the Plaintiff's Verified Complaint for Declaratory and Other Relief, the Acting Village President and Board of Trustees of the Village of Glen Ellyn were employees of the Defendant THE VILLAGE OF GLEN ELLYN.

2.     At all times relevant to the matters alleged in the Plaintiff's Verified Complaint for Declaratory and Other Relief, the Acting Village President and Board of Trustees of the Village of Glen Ellyn were acting within the scope of their employment of THE VILLAGE OF GLEN ELLYN.

3.     At all times relevant to the matters alleged in the Plaintiff's Verified Complaint for Declaratory and Other Relief, the Acting Village President and Board of Trustees of the Village of Glen Ellyn performed no act which violated any clearly-established constitutional right of the Plaintiff of which a reasonable person would have known. Moreover, the Acting Village President and Board of Trustees of the Village of Glen Ellyn's actions were taken in good faith and with a reasonable belief that such actions were lawful.

4.     As a result, the Acting Village President and Board of Trustees of the Village of Glen Ellyn are entitled to be clothed with official, qualified immunity from the claims for money damages alleged in the Plaintiff's Verified Complaint for Declaratory and Other Relief.

WHEREFORE, the Village denies that Plaintiff is entitled to judgment against them in any amount whatsoever and respectfully prays that this Honorable Court enter judgment in its favor and that the costs of this action be assessed against the Plaintiff.

## II.     SECOND AFFIRMATIVE DEFENSE

### Punitive Damages

For its second affirmative defense to the claims alleged in the Plaintiff's Verified Complaint for Declaratory and Other Relief, the Village states as follows:

Any request Plaintiff may make for punitive damages would deprive THE VILLAGE OF GLEN ELLYN of due process of law in violation of the Fifth, Eighth and Fourteenth Amendments, in that:

    a. Liability for punitive damages will not be proven beyond a reasonable doubt or at least by clear and convincing evidence;

    b. Any award or punitive damages would be disproportionate to actual damages; and

    c. Any award of punitive damages would constitute an excess fine in violation of the eighth amendment's prohibition of excessive fines and penalties.

Moreover, THE VILLAGE OF GLEN ELLYN cannot be held liable for punitive damages pursuant to 745 ILCS 10/2-102.

WHEREFORE, the Village denies that Plaintiff is entitled to judgment against them in any amount whatsoever and respectfully prays that this Honorable Court enter judgment in its favor and that the costs of this action be assessed against the Plaintiff.

### III.    THIRD AFFIRMATIVE DEFENSE

### Illinois Tort Immunity Act 745 ILCS 10/2-201

For its third affirmative defense to the claims alleged in the Plaintiff's Verified Complaint for Declaratory and Other Relief, the Village states as follows:

1. Defendant, THE VILLAGE OF GLEN ELLYN, is a unit of local government, a "local public entity" as defined by Section 1-206 of the Tort Immunity Act (745 ILCS 10/1-206) and is thereby subject to the Tort Immunity Act.

2. At all relevant times, as employees for Defendant, THE VILLAGE OF GLEN ELLYN, the Acting Village President and Board of Trustees of the Village of Glen Ellyn were a "public employee" as defined by Section 1-207 of the Tort Immunity Act (745 ILCS 10/1-207) and are

thereby subject to the Tort Immunity Act.

3. Under Section 2-201, of the Tort Immunity Act (745 ILCS 10/2-201), public employees, such as the Acting Village President and Board of Trustees of the Village of Glen Ellyn, serving in a position involving the determination of policy or the exercise of discretion, are not liable for injury resulting from their act or omission in determining policy when acting in the exercise of such discretion, even though abused.

4. Any and all acts or omissions by the Acting Village President and Board of Trustees of the Village of Glen Ellyn as alleged in Plaintiff's Verified Complaint for Declaratory and Other Relief relate to determination of policy and/or exercise of discretion and, therefore, the Acting Village President and Board of Trustees of the Village of Glen Ellyn are immune from any and all liability.

WHEREFORE, the Village denies that Plaintiff is entitled to judgment against them in any amount whatsoever and respectfully prays that this Honorable Court enter judgment in its favor and that the costs of this action be assessed against the Plaintiff.

## IV.    FOURTH AFFIRMATIVE DEFENSE
### Illinois Tort Immunity Act 745 ILCS 10/2-103 & 2-205

For its fourth affirmative defense to the claims alleged in the Plaintiff's Verified Complaint for Declaratory and Other Relief, the Village states as follows:

1.    Realleges paragraphs 1 - 2 of its Third Affirmative Defenses as paragraph 1 of its fourth affirmative defense as if fully set forth herein.

2.    Sections 2-103 and Section 2-205 provide a local government and its employees with immunity for adopting or failing to adopt an enactment of law.

3.    Sections 2-103 and 2-205 of the Illinois Tort Immunity Act state in pertinent part

as follows:

> 2-103. A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law.
> Sec. 2-205. A public employee is not liable for an injury caused by his adoption of, or failure to adopt, an enactment, or by his failure to enforce any law.

4.      Under Sections 2-103 & 2-205 of the Illinois Tort Immunity Act, the Village and its employees are immune from allegations of enacting or failing to enact a Village ordinance.

5.      As a result, the Village and its employees are entitled to be clothed with all immunities provided under the Illinois Tort Immunity Act, 745 ILCS 10/1-101, *et seq.*, including, but not limited to, the immunities provided under 745 ILCS 2-103, 2-205 and 2-109.

WHEREFORE, the Village denies that Plaintiff is entitled to judgment against them in any amount whatsoever and respectfully prays that this Honorable Court enter judgment in its favor and that the costs of this action be assessed against the Plaintiff.

### V.      FIFTH AFFIRMATIVE DEFENSE

### Failure to Exhaust Administrative Remedies

For its fifth affirmative defense to the claims alleged in the Plaintiff's Verified Complaint for Declaratory and Other Relief, the Village states as follows:

In Illinois, when a party complains that a zoning ordinance is arbitrary and unreasonable, the party must exhaust its administrative remedies before seeking judicial relief. *Nw. Univ. v. City of Evanston*, 74 Ill. 2d 80, 86, 383 N.E.2d 964, 967 (1978). *See also U.S. v. Village of Palatine*, 37 F.3d 1230 (7th Cir. 1994).

Here, Plaintiff has failed to exhaust the administrative remedies available to it, and instead filed this matter without doing so, as such the matter is not ripe and should be dismissed as moot.

Respectfully Submitted,

VILLAGE OF GLEN ELLYN

By:  /s/Deborah A. Ostvig
        One of Its Attorneys

Michael E. Kujawa, ARDC# 6244621
Patrick T. Brankin, ARDC# 6228896
Richard J. Veenstra, ARDC# 6279968
Deborah A. Ostvig, ARDC# 6287031
Schain, Banks, Kenny & Schwartz, Ltd.
70 W. Madison Street, Suite 5400
Chicago, Illinois 60602
Phone: (312) 345-5700
Fax: (312) 345-5701
mkujawa@schainbanks.com
pbrankin@schainbanks.com
rveenstra@schainbanks.com
dostvig@schainbanks.com

Paul L. Stephanides, ARDC# 6204555
Village Attorney
Village of Glen Ellyn
535 Duane Street
Glen Ellyn, Illinois 60137
Phone: (630) 547-5294
pstephanides@glenellyn.org

## **AFFIDAVIT**

I, Deborah A. Ostvig, do hereby state and certify that the statements of fact contained in the above Answer and Affirmative Defenses to Plaintiff's Verified Complaint for Declaratory and Other Relief are true and correct, unless stated to be upon information and belief, in which case I verily believe the same to the true.

Deborah A. Ostvig