UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLAKELICK PROPERTIES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 25-cv-04569 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| THE VILLAGE OF GLEN ELLYN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Blakelick Properties, LLC ("Blakelick") has moved for a preliminary injunction against Defendant The Village of Glen Ellyn ("Glen Ellyn") to prevent Glen Ellyn from enforcing an ordinance that would prevent Blakelick from renting its property in Glen Ellyn, Illinois on a short-term basis. For the foregoing reasons, the Court grants Blakelick's motion for a preliminary injunction [6], but only as to Blakelick itself. Glen Ellyn is enjoined from enforcing the Ordinance against Blakelick for the duration of these proceedings, but it may enforce the Ordinance against all other property owners within its jurisdiction once the Ordinance goes fully into effect. Additionally, the Court waives Blakelick's Federal Rule 65(c) bond requirement. Finally, Blakelick's recent motion for a second temporary restraining order [31] is denied as moot.

**BACKGROUND**

Unless otherwise indicated, the following details are taken from Blakelick's complaint and are assumed to be true for the purposes of resolving this motion. Dkt. 1 [hereinafter "Compl."]. Blakelick is an Illinois limited liability company that owns and operates a five-bedroom house located in Glen Ellyn, Illinois ("the Property"). The members of Blakelick, David Blake and Melissa Footlick, purchased the Property in 2021 and have operated it through Blakelick as a rental property since April

2022. Blakelick uses internet services such as AirBnB and VRBO to list this Property and other properties it owns for short-term rentals. When Blake and Footlick purchased the Property it was located in unincorporated DuPage County; however, the Property was annexed into Glen Ellyn's jurisdiction on January 1, 2024.

Beginning in June 2023, Blakelick began to receive complaints of noisy guests from Raymond Conley, who lives next door to the Property. Blakelick alleges that the vast majority of these complaints were unfounded. It also alleges that Mr. Conley has on multiple occasions engaged in threatening behavior toward racial minority guests staying at the Property. In an email, Mr. Conley described the Property as a "perversion," and told Blakelick that he would "do everything in [his] capability to see to it that such use of property is banned in this area." Blakelick claims that Glen Ellyn issued, at the behest of Mr. Conley, an "Ordinance Complaint and Citation" notice to Plaintiff, which alleged that Blakelick had violated municipal zoning ordinances and that its guests' noisiness was causing a "nuisance." Blakelick states that the noisiness in question occurred during daylight and lasted less than ten minutes. Ultimately, Blakelick agreed to pay a $250 fine, without admitting fault, in exchange for the dismissal of the citation.

On April 14, 2025, Glen Ellyn enacted Ordinance No. 7180-VC (the "Ordinance"), which bans the operation and advertisement of short-term rental properties within Glen Ellyn's jurisdiction. The Ordinance defines "short-term rentals" as those lasting for thirty days or fewer. The enactment of the Ordinance followed a discussion on March 17, 2025, in which Glen Ellyn Community Director Jennifer Heneghan referred to an "extremely problematic" property that was placing a burden on police due to the amount of complaints. Blakelick claims that Ms. Heneghan was referring to the Property and to Mr. Conley's allegedly unfounded reports to the police. Several attendees expressed support for a ban, stating that they did not like short-term rentals and that they wanted Glen Ellyn to be "more like Hinsdale, less like Roselle." However, one attendee stated that Glen Ellyn had only had

one actual problem with short-term rentals in the last eight years. Blakelick alleges that no short-term rental property operators were invited to the March 2025 discussion, and also that it did not receive notice of the April 2025 meeting to vote on the Ordinance.

The Ordinance would have banned all short-term rentals occurring after July 14, 2025. However, on May 8, 2025, this Court granted a temporary restraining order ("TRO") enjoining Glen Ellyn from enforcing the Ordinance for fourteen days. *Blakelick Props., LLC v. Vill. of Glen Ellyn*, No. 25-CV-04569, 2025 WL 1348569 (N.D. Ill. May 8, 2025) [hereinafter "TRO"]. The Court later extended the TRO to July 15, 2025. Dkt. 22. The TRO expired on that date; however, Glen Ellyn also adopted a new ordinance delaying the effective date of the short-term rental ban to January 1, 2026. Dkt. 25.

Blakelick claims that, if it comes into effect, the Ordinance will force it to immediately cease operations, cancel future bookings, incur 10–25% fines and penalties from Airbnb, be at risk of losing its "Superhost" status on Airbnb (which may affect other rental properties operated by Blakelick), cause the Property to be "de-platformed" from internet-based short-term rental websites, and require Plaintiff to sell the Property in a fire sale and at substantial loss.

## LEGAL STANDARD

A preliminary injunction is an extraordinary remedy that is never awarded as a matter of right. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). To obtain a preliminary injunction, the moving party has the burden to demonstrate that (1) it has some likelihood of success on the merits, (2) traditional legal remedies would be inadequate, and (3) without such relief, it will suffer irreparable harm. *Valencia v. City of Springfield,* 883 F.3d 959, 965 (7th Cir. 2018). If these elements are met, the court "proceeds to the balancing phase of the analysis," during which it "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court

were to grant the requested relief." *Id.* at 966 (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009)). The court should also, where appropriate, consider any effects that granting or denying a preliminary injunction would have on nonparties, or the public interest. *Id.* When ruling on a preliminary injunction, "all of the well-pleaded allegations [in the movant's] complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true." *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976).

## DISCUSSION

### I. Likelihood of Success on the Merits

"A party moving for preliminary injunctive relief need not demonstrate a likelihood of absolute success on the merits. Instead, [it] must only show that [its] chances to succeed on [the] claims are better than negligible." *Valencia,* 883 F.3d at 966 (internal citations omitted). Here, Blakelick brings several claims against Glen Ellyn. It argues that the Ordinance: violates Blakelick's Due Process rights; constitutes both a *per se* and a regulatory taking under the Fifth Amendment; violates Blakelick's First Amendment right to free speech; contravenes the Contracts Clause by interfering with Blakelick's existing contractual obligations with short-term rental platforms; and violates the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* To succeed in its motion for a preliminary injunction, Blakelick needs to show that it is likely to succeed on the merits of at least one claim. *See, e.g., Girl Scouts of Manitou Council, Inc.,* 549 F.3d at 1096. The Court will focus its analysis on Blakelick's regulatory taking claim.

The Takings Clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment, provides that private property will not be "taken" for public use absent just compensation. *Murr v. Wisconsin,* 582 U.S. 383, 392 (2017). The Supreme Court has also recognized that a significant regulatory burden on the use of property may be "recognized as a taking" under the Fifth Amendment, even if the property has not been literally taken by the government. *Id.* at 393

(internal quotations omitted). Absent certain exceptions, "a regulation which denies all economically beneficial or productive use of land will require compensation under the Takings Clause." *Id.* (internal quotations omitted). Where a regulation does not deprive the landowner of all economically beneficial or productive use of the land, a taking may still be found based on a variety of factors, including "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-based expectations; and (3) the character of the governmental action." *Id.* Under this rubric, the "test for regulatory taking necessarily requires a comparison of the value that has been taken from the property with the value that remains in it[.]" *Morgan v. City of Chicago,* 115 F.4th 841, 847 (7th Cir. 2024), *reh'g denied,* No. 22-2801, 2024 WL 4534752 (7th Cir. Oct. 21, 2024).

In this Court's TRO opinion, it found that that Blakelick had demonstrated a likelihood of success on the merits for at least its regulatory taking claim. TRO *3. Blakelick argues that the Ordinance would deprive it of the use of the Property for which Mr. Blake and Ms. Footlick purchased it, namely, for use as a rental property. Compl. ¶¶ 135, 139–141. Although the Ordinance would not prohibit all rental uses of the Property, Blakelick alleges that that the market for rentals lasting longer than thirty days for a furnished five-bedroom house in Glen Ellyn is "virtually nonexistent." Dkt. 6 at *5 [hereinafter "Pl. Br."]. Blakelick alleges that economic conditions would force it to sell the Property in a "fire sale" should the Ordinance go fully into effect. *Id.* The Court sees no reason to disturb its previous finding that "the Ordinance would prevent Plaintiff from economically utilizing the Property in a feasible manner and interfere with Plaintiff's investment-backed expectations." TRO *3 (citing *Morgan,* 115 F.4th at 847).

Glen Ellyn has not disputed any facts relevant to Blakelick's regulatory taking claim, but it raises legal arguments that Blakelick has failed to demonstrate a likelihood of success on the merits.[1]

---

[1] Since this motion became fully briefed, Glen Ellyn has filed its Answer to Blakelick's Complaint. Dkt. 27. In that document, Glen Ellyn denies several allegations relevant to the regulatory takings claim. *See id.* at ¶¶ 139–142. However, for the purpose of resolving this motion the Court must take "all of the well-pleaded allegations"

First, Glen Ellyn argues that the Ordinance's impact on Blakelick is insufficiently burdensome to constitute a regulatory taking. Dkt. 19 at *11 [hereinafter Def. Resp.]. Under Supreme Court precedent, a taking cannot be established solely by "Mere diminution in the value of property." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 645 (1993) *citing Village of Euclid v. Ambler Realty* Co., 272 U.S. 365, 384, (1926). However, the Supreme Court has also clarified that a distinction exists between "mere diminution in value" of property and "den[ying] an owner economically viable use of his land." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1016 nn.6–7 (1992). The first category does not constitute a taking; the second does. *Id.* Here, Blakelick has not merely alleged that the Ordinance will reduce the value of the Property; indeed, Blakelick has barely made that argument at all. *See generally* Compl.; Pl. Br. Instead, Blakelick argues that it will be unable to continue with the investment-backed expectations of economic use (*viz.*, short-term rentals) that Mr. Blake and Ms. Footlick had when they purchased the Property. Compl. ¶¶ 135, 139–141. That sort of allegation, if proven, constitutes a regulatory taking. *Sheetz v. Cnty. of El Dorado, California*, 601 U.S. 267, 274 (2024); *Lucas*, 505 U.S. at 1016 nn.6–7 (1992); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495 (1987).

Glen Ellyn also contends that Blakelick will not be deprived of all economic use of the Property because the Ordinance will not prohibit longer-term rentals. Def. Resp. *11. However, Blakelick has alleged that maintaining the property solely for the purpose of longer-term rentals would be "economically infeasible" because the market for such rentals, for a house like the Property, essentially does not exist. Compl. ¶ 139. At this stage of the proceedings, the Court must take as true all well-pleaded allegations in Blakelick's complaint and motion brief. *Elrod* 427 U.S. at 350 n.1. Perhaps this allegation of economic non-feasibility will eventually be proven false; but for now the

---

in Blakelick's motion as true; as such, the Court affords no weight to Blakelick's denials in its Answer. *Elrod*, 427 U.S. at 350 n.1.

Court regards it as plausible, and Glen Ellyn has not given a reason to construe the allegation as anything other than well-pleaded. The Court therefore must take as true Blakelick's allegation that longer-term rentals are not an economically feasible use of the property.

The Court therefore continues to find that Blakelick is likely to succeed on the merits of at least its regulatory taking claim.

## II. Adequacy of Legal Remedies and Irreparable Harm

In determining whether irreparable harm is satisfied, Plaintiff must also show that no adequate legal remedy is available to cure the harm. *Life Spine Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021). "Inadequate does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Id.*

Glen Ellyn argues that Blakelick will not suffer irreparable harm and has adequate remedies at law because it has requested money damages in the alternative to injunctive relief. Def. Resp. *14. However, the law is not so binary as Glen Ellyn presents it. True, an *adequate* alternative remedy in the form of money damages means that harms suffered will not be irreparable, but Glen Ellyn has not explained why money damages present an adequate alternative remedy for Blakelick. Requesting money damages in the alternative is not, by itself, a judicial admission that money damages present an adequate remedy; it may simply represent an inadequate alternative that a party requests because it would still be better than nothing. As Blakelick argues in its brief—and as the Court explained in its TRO opinion—the critical inquiry is to determine the degree to which money damages would be "seriously deficient compared to the harm suffered." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003); Pl. Br. *7; TRO *3. Glen Ellyn does not conduct any such analysis in its brief; it rests its opposition almost entirely on its overstated argument that a mere request for money damages forecloses the possibility of injunctive relief.

It is true that, in the abstract, a takings claim is unlikely to present the possibility of irreparable harm and inadequate relief. *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 201 (2019). However, as the Court noted in its TRO opinion, the Seventh Circuit has recognized that the potential loss of an entire business is considered irreparable harm. *Girl Scouts of Manitou Counsel, Inc.,* 549 F.3d at 1090; *see* TRO *4. A damages remedy can be inadequate if the remedy comes "too late to save plaintiff's business." *Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994). Here, Blakelick alleges that the Ordinance would make continued operation of the Property as a rental unit completely infeasible, and potentially also result in Blakelick being deplatformed from AirBnB and VRBO.[2] Compl. ¶¶ 89–92. That would constitute the loss of an entire business and thus irreparable harm, for which no remedy at law—even money damages—could offer adequate compensation.

A money damages remedy may also be inadequate "when the nature of the loss incurred by the plaintiff makes it difficult to calculate damages." *Girl Scouts of Manitou Council*, 549 F.3d at 1095 (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). Here, Blakelick argues that, even if it did not lose its entire business, its loss would still be difficult to calculate. Pl. Br. *8. It would be hard to determine the number of reservations that might have occurred but for the Ordinance, and it would be enormously difficult to calculate the loss incurred by Blakelick's other properties if it is deplatformed from AirBnB or if it loses its Superhost status. These difficulties provide good reason to conclude that Blakelick's potential losses may not be adequately remedied by money damages. Glen Ellyn does not respond at all to Blakelick's argument on this point.

---

[2] Glen Ellyn argues that "based on searches in Airbnb's Help and Community Centers, it appears that Plaintiff could maintain its 'Superhost' status while pausing reservations until this matter is resolved on the merits." Def. Resp. *15. However, it has not offered any evidence for this claim beyond this unsourced representation. In any case, for the purposes of deciding this motion the Court must take as true Blakelick's plausible claim that it could lose its Superhost status or even be deplatformed from short-term rental platforms. *Elrod* 427 U.S. at 350 n.1.

The Court also observes that Blakelick has alleged several other claims, such as deprivation of First Amendment rights, for which injunctive relief is a more typical remedy. Although the Court has not examined the likelihood of those claims succeeding on the merits, their presence adds some additional weight to the conclusion that Blakelick could suffer irreparable harm without any adequate remedy at law if the Ordinance goes fully into effect.

Finally, with the passage of the new ordinance delaying the effective date of the rental ban to January 1, 2026, Glen Ellyn has argued that there is no longer any need to implement a preliminary injunction. Dkt. 23. It argues that the fact that Blakelick does not currently have any bookings for 2026 means that Blakelick will not suffer irreparable harm if the Ordinance goes into effect. *Id.* But the reason why Blakelick does not have any bookings for 2026 is because it does not want to run afoul of the Ordinance. *See* dkt. 24 at *3. Indeed, prohibiting such bookings is the very purpose of the Ordinance. Glen Ellyn cannot rely on the disruption to Blakelick's business that it has itself created with its Ordinance to argue that Blakelick will not suffer irreparable harm if the Ordinance goes into effect. Additionally, Ms. Footlick has submitted an affidavit in which she claims, as of July 2, 2025, to have already received booking requests for 2026, which she has turned down owing to "uncertainty" created by the Ordinance. *Id.* ex. A. If the Ordinance does not go into effect on January 1, 2026, then it is likely that customers will continue to book rentals at the Property, as they have done for the past three years. Nothing about the delayed onset of the Ordinance to January 1, 2026 affects the Court's analysis of the harm that Blakelick might suffer.

The Court therefore finds that Blakelick will likely suffer irreparable harm without an adequate remedy at law if the Ordinance goes fully into effect.

### III. Balance of Equities and Public Interest

The Village of Glen Ellyn has permitted short-term rentals for years. At the Property itself, Blakelick alleges that only one or two incidents, out of 115 bookings, could possibly rise to the level

of a private nuisance against Mr. Conley. Compl. ¶ 113. More broadly, Blakelick reports there have been very few significant issues involving short-term rentals in Glen Ellyn within the last eight years. *Id.* ¶ 71. Blakelick also claims that short-term rentals make up "less than 1% of all renter-occupied housing units in Glen Ellyn." *Id.* ¶ 112. Glen Ellyn has not offered an argument to the contrary (or, indeed, any argument concerning the balance of equities and public interest). *See generally* Def. Resp. The Court finds that balance of equities favors Blakelick and that the public interest will not be harmed by pausing enforcement of the Ordinance against Blakelick while litigation proceeds.

### IV. Scope of the Injunction

The Supreme Court has recently ruled that district courts may not impose injunctions that reach beyond the parties to a case, except where doing so is necessary to afford complete relief to the movant. *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025).

The Court finds that Blakelick is substantially likely to prevail on the merits of at least one of its claims; that Blakelick will suffer irreparable harm without any adequate remedy at law if the Ordinance goes into effect; that the balance of equities favors Blakelick; and that the public interest will not be harmed by a delay in effectuating the Ordinance against Blakelick. However, "complete relief" for Blakelick does not require extending the injunction to non-parties as well. As such, the Court will grant Blakelick's request for a preliminary injunction, but only as to Blakelick itself. Glen Ellyn is enjoined from enforcing the Ordinance against Blakelick for the duration of these proceedings, but it may enforce the Ordinance against all other property owners within its jurisdiction once the Ordinance goes fully into effect.

### IV. Bond Waiver

Finally, Blakelick has moved that the Court waive the bond required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. Pro. 65(c) ("The [C]ourt may issue a temporary restraining order… only if the movant gives security in an amount that the Court considers proper to pay the costs and

damages sustained by any party found to have been wrongfully enjoined or restrained.") The Court may forgo the bond requirement when "the [C]ourt is satisfied that there's no danger that the opposing party will incur any damages from the injunction." *Habitat Educ. Ctr. v. U.S. Forest Serv.,* 607 F.3d 453, 458 (7th Cir. 2010).

The Court previously found that Glen Ellyn would not incur any damages from issuing a TRO in this case. TRO *4. The same analysis is applicable to the current motion for a preliminary injunction, and Glen Ellyn has not offered any argument to the contrary. Accordingly, the Court waives the Rule 65(c) bond requirement.

## CONCLUSION

For the reasons stated above, the Court grants Blakelick's motion for a preliminary injunction [6], but only as to Blakelick itself. Glen Ellyn is enjoined from enforcing the Ordinance against Blakelick for the duration of these proceedings, but it may enforce the Ordinance against all other property owners within its jurisdiction once the Ordinance goes fully into effect. Additionally, the Court waives Blakelick's Federal Rule 65(c) bond requirement. Finally, Blakelick's recent motion for a second temporary restraining order [31] is denied as moot.

**IT IS SO ORDERED.**

Date: 12/30/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge